KILE, Respondent, vs. ANDERSON and another, Appellants.

*December 14, 1923—January 15, 1924.*

*Conspiracy: Gist of action: Finding of no conspiracy: Liability of individual defendants: Statements to pastor: Conditional privilege: Malice: Burden and degree of proof: Statements incautiously or negligently made: Evidence: Remoteness: Relevancy.*

1. In an action for conspiracy for fraudulently and maliciously procuring the suspension of a pastor from the church, the gravamen of the charge not being the conspiracy but the damage done, a finding that there was no conspiracy did not negative the liability of the individual defendants; and allegations of conspiracy in the complaint may be regarded as matters of aggravation or inducement and as not necessary to be proved.  p. 475.

2. Where there was an issue as to whether false and malicious statements of the defendants caused the suspension, the denial of a request to submit such issue to the jury was prejudicial error.  p. 476.

3. Answers made by defendants to questions concerning their pastor, asked by another clergyman of their faith who was seeking information as. to the situation in the congregation, and which were given by the defendants without knowledge on their part of the purpose of the questioner, were conditionally privileged and there was no presumption of malice; but the privilege does not extend to any false or malicious statements.  p. 477.

4. Although fraud must be proved by clear and satisfactory evidence, in tort actions malice may be shown by a preponderance of the evidence; and when statements relied on to prove the conspiracy were shown to be conditionally privileged, the burden rested upon plaintiff to prove malice by a preponderance of the evidence only.  p. 477.

5. It not being charged that the statements alleged to be the procuring cause of the suspension were made incautiously or negligently, but that they were made falsely and maliciously, it was error to instruct the jury that if the statements were not privileged, either because they were knowingly untrue or were maliciously made in utter disregard of facts known by defendants which were sufficient to demonstrate to a man having ordinary caution and intelligence that they were in all probability untrue and were maliciously made with intent to procure suspension, then to find for plaintiff.  p. 478.

6. Statements made by the defendants during dissensions in the congregation long prior to the statements charged in the complaint were so remote as bearing on express malice that they should have been excluded, and testimony of the district president to whom the alleged malicious statements were made, that he favored reinstatement of the plaintiff, given nine months after the cause of action is claimed to have arisen, is clearly inadmissible.  p. 479.

APPEAL from a judgment of the circuit court for Portage county: BYRON B. PARK, Circuit Judge. *Reversed,*

H. J. *Severson* of Iola, attorney, and B. R. *Goggins* of Wisconsin Rapids, of counsel, for the appellants.

For the respondent there was a brief by M. E. *Davis* of Green Bay and *Fisher & Cashin* of Stevens Point, and oral argument by *Mr. Davis.*

JONES, J.    This is an action for conspiracy against four defendants for fraudulently and maliciously procuring the suspension of the plaintiff as a pastor in the Norwegian Lutheran Church of America.    The jury found that there was no conspiracy, but judgment was rendered against the defendants *Carl Anderson* and *Anton Anderson* individually, and as to the other two defendants the action was dismissed.

In the year 1917 the plaintiff became pastor of two Lutheran churches, at New Hope and Alban, in Portage county, under a joint contract giving the right to terminate his services on a two-thirds vote of the members.    He lived in a parsonage on a church farm at New Hope.    In 1919 complaints arose in both churches against the pastor and in the Alban congregation there was more than a two-thirds vote requesting his resignation and he resigned as to that congregation.

At New Hope a majority, but not two thirds, requested his resignation but he refused to resign.    The higher church officials advised him to resign from New Hope, but he declined and continued to keep possession of the church and other property, causing much division in the congregation.

In June, 1920, an action was commenced by the New Hope congregation to restrain him from acting as pastor.

On June 16, 1920, there was a general council of the whole church in Minneapolis in which these difficulties were discussed and in which the plaintiff signed an agreement, in part as follows:

"Undersigned admits that he has dealt unwisely and not in the interest of the Kingdom of God by ignoring the situation in the congregation, stubbornly refusing to heed to good advices from the church dignitaries or officials; and therefore asks the forgiveness of the church body.

"Undersigned promises to resign from New Hope congregation as soon as he arrives home, without insisting on his three months' stay after resignation as the constitution grants.  (Signed) N. F. Kile."

The committee advised that all charges against him be withdrawn, and the report was accepted.  The plaintiff returned home and on June 17th consulted his attorney at Stevens Point.  On June 23d there was a meeting between the president of the New Hope congregation and their attorney and the attorney for the plaintiff respecting the settlement of the pending suit.  Thereafter the president of the congregation called a meeting of the trustees, which was held later in the same day, and the record of the meeting is as follows:

"June 23, 1920.  Meeting of the board of trustees of the New Hope congregation held in Farmers State Bank rooms at Iola.  All the board members were present.  We, the trustees of New Hope congregation, agree to settle with *Rev. Kile* on the following plans: to pay him (*Kile*) $350 with the agreement that he move out of the parsonage on or before the 15th of July, and to give up all the books and property belonging to the congregation peaceably according to his stipulation signed by him at the Minneapolis conference.  Above was carried by the following votes: five voted 'Yes;' and Ludvig Hanson and Halver Martindson voted 'No.'"

On June 28, 1920, a stipulation was entered into between the board of trustees of the New Hope church and plaintiff. The stipulation was entitled in the then pending suit in which the congregation was plaintiff and *N. F. Kile* and Thomas Thompson were defendants. There were recitals relating to the commencement of the suit and the transactions at the convention in Minneapolis, and the agreement there made, and the stipulation then proceeded as follows:

"It is hereby stipulated:

"1. That the defendant *Rev. N. F. Kile* shall and does hereby resign as pastor of the plaintiff congregation, said resignation to take effect on the 1st day of July, 1920, and without the right of a three months' stay thereafter, as provided in the constitution of the plaintiff.

"2. The plaintiff shall and does hereby agree to pay to the defendant *N. F. Kile* his salary as pastor of the plaintiff congregation until the 1st day of July, 1920, said salary to be paid within thirty days thereafter, amounting to $350.

"3. The defendant *N. F. Kile* shall and does hereby agree to remove from the farm and property belonging to the plaintiff on or before the 1st day of August, 1920, and to deliver possession to the plaintiff by said last named date; and in case of his failure to do so, judgment may be entered herein, awarding possession of the farm to the plaintiff without the requirement of a separate action.

"4. The defendant *N. F. Kile* agrees that he will not in any way attempt to influence the members of the plaintiff congregation, who have been members of his faction in the recent trouble in the said congregation, to withdraw from said congregation.

"5. That the court may make an order confirming this stipulation; and that it shall not be necessary for an acceptance of said resignation in order that the same shall be effective, but that the order of the court confirming this stipulation shall constitute an acceptance by the plaintiff congregation of the said resignation of the defendant *Kile* as pastor.

"6. That the above entitled action shall be dismissed without costs to either party."

It was signed by the president of the board of trustees, the respective attorneys, and *Mr. Kile.*

Although several copies were made, none was delivered to the president or any officer of the church. This is the document which will be referred to as the court resignation.

On July 1st this stipulation was confirmed by the court and the case was dismissed September 25th. On July 31st plaintiff left the farm but stayed with friends and relatives in the parish until August 23d, when he and his wife went to La Crosse, where he remained until September 4th.

On September 5th the four defendants sued in this action were at Scandinavia, Waupaca county, where proceedings were to be had for laying the corner stone of a new college. The defendant *Anton Anderson* there met the Reverend Nordby, president of the Eastern District, and it was arranged that later in the day there should be a meeting to discuss the subject of securing a new pastor at New Hope.

Accordingly, later in the day the four defendants met the Reverend Nordby and he commenced to ask about conditions in the New Hope congregation. The answers which were made to these questions and the subsequent suspension of the plaintiff led to the bringing of an action by the plaintiff against *Carl Anderson* and Mr. Nordby which was dismissed after an adverse examination of the Reverend Nordby had been held.

In this conversation, in reply to questions, some of the defendants expressed the view that conditions in New Hope were as bad or worse than ever. Reverend Nordby then asked if *Kile* had resigned, and one of the defendants, probably *Anton Anderson,* asked if he referred to the resignation mentioned at Minneapolis, and he answered, "Why, certainly," and *Anton Anderson* said that he did not know of any and had no record of it. One of the four, referring to *Carl Anderson,* said: "Here is the secretary of the congre-

gation. ask him," and he answered that there was nothing on record to show the resignation, and he didn't know of any.

Reverend Nordby then asked if the plaintiff had moved away or moved out of the congregation, and one of the four answered that he had moved out of the parsonage, but not as he knew out of the congregation. The matter of hiring a new pastor was then taken up and Nordby recommended one for the place.

On September 7th there was a meeting of the church council held at St. Paul which was attended by Reverend Nordby, in which he reported the information he had obtained, and the council wi'hout notice to the plaintiff temporarily suspended him. On September 15th a report of the action of the council was published in the Lutheraneren, which had a circulation among about 35,000 subscribers.

In October, 1921, the suspension was withdrawn and the plaintiff became pastor in another church.

Before this action was begun, about June 24, 1921, an agreement in writing was made between Reverend Nordby and the plaintiff in which it was admitted that the plaintiff had actually resigned on June 28, 1920; that the resignation came in a rather unusual way and that the Reverend Nordby was not cognizant of the fact, but acted according to what he thought was reliable information, and that he and the church council had acted in good faith and that nothing would be gained by further airing the case; and in order to come to a peaceable settlement it was agreed that they mutually apologize and that this should be considered a final settlement between them and the church council.

It is one of the contentions of appellants' counsel that the finding of the jury of no conspiracy negatived the liability of any of the defendants and that the action should have been dismissed on that ground. For this proposition counsel rely on the case of *St. Louis S. W. R. Co. v. Thompson,* 102 Tex. 89, 113 S. W. 144, 19 Ann. Cas. 1350. This was an action in which conspiracy was alleged between a railroad

company and several others to procure the expulsion of the plaintiff from the Brotherhood of Locomotive Engineers. The verdict of the jury was against the railroad company but in favor of the other defendants.

The court held that under the facts the railroad company could not participate in the expulsion of the plaintiff from the order, and could only be held liable for the results of that action by reason of the fact that it had entered into a conspiracy with the other defendants to procure some action by the Brotherhood and that the acquittal of the other parties acquitted the railroad company.

More than 200 years ago, in an action for maliciously procuring the plaintiff to be indicted for causing a riot, HOLT, C. J., said:

"An action will not lie for the greatest conspiracy imaginable, if nothing be put in execution; but if the party be damaged, the action will lie." *Savile v. Roberts,* 1 Ld. Raym. 374, 378.

It is well settled that in actions of this character the conspiracy is not the gravamen of the charge. The foundation of the action is the damage done. *Randall v. Lonstorf,* 126 Wis. 147, 105 N. W. 663; *Jones v. Monson,* 137 Wis. 478, 119 N. W. 179.

If the proofs clearly showed that the defendants by false representations wilfully and maliciously caused the suspension of the plaintiff, they would be liable in damages even though the conspiracy were not proven. The authorities seem clear on this question, although there are some cases holding that in case of failure of the charge of conspiracy a single defendant will not be held liable, especially if he was not in a position alone to cause the injury. The cases will be found collected in 19 Ann. Cas. 1254.

In the answers to the third and fourth questions the jury found as to each of the defendants *Anton Anderson* and *Carl Anderson* that they did "wilfully, falsely, and maliciously, with intent to procure the suspension of the plaint-

iff, state to Reverend Nordby that he did not know that *Reverend Kile* had resigned, and that he was still within the congregation, and that conditions were as bad as they had ever been."

According to the rules of the church there were three regular modes by which a pastor could resign: (1) by a statement to the congregation by the pastor; (2) by a delivery of the resignation to the secretary of the congregation; (3) by such delivery to the president of the board of trustees. The testimony is undisputed that at the conference with Reverend Nordby at Scandinavia when the subject of resignation was mentioned the first method was the kind referred to.

It was one of the litigated questions whether the defendants had any knowledge of the court resignation. They all emphatically denied any such knowledge. There was no direct evidence that *Anton Anderson* had knowledge of the court resignation before the conversation with Reverend Nordby. There was some testimony, not of the most satisfactory kind, that *Carl Anderson* did have such knowledge, and it is claimed by counsel for plaintiff that there were such circumstances proven as justified the finding of the jury on this subject as to both defendants. Since there is to be a new trial we shall not discuss the evidence in detail on this subject. Nor shall we discuss the evidence as to whether the plaintiff had left the congregation, or the conditions existing in the congregation at the time of the conference with Reverend Nordby.

The complaint is very long and its allegations need not be here detailed. But there are certain averments which were essential to the plaintiff's cause of action. Among other things it was alleged:

"That in the month of August, 1920, the above named defendants unlawfully and maliciously connived, colluded, and conspired together for the purpose of injuring the plaintiff in his good name and reputation, and in his said calling as an ordained minister in said church, and to secure

his suspension and removal as a pastor in the said Norwegian Lutheran Church of America, and to have his name published to the members of said church as a person unworthy of their respect and confidence."

It was alleged that there was to be a church council at St. Paul on September 7, 1920; that in furtherance of the conspiracy—

"The defendants shortly prior to the meeting of the said church council, to wit, on the 5th day of September, 1920, sought out and obtained an interview with the said Reverend J. Nordby for the purpose of influencing and procuring the said Reverend J. Nordby to secure action by the said church council suspending this plaintiff as such pastor in the said Norwegian Lutheran Church of America."

The complaint then set forth the representations and their falsity. Then followed this paragraph:

"That, acting upon the said false and malicious statements so made to him and believing them to be true, the said Reverend J. Nordby repeated the said statements to the said church council, and represented the same to be true; and thereupon and because thereof, and not otherwise, the said church council suspended this plaintiff as such pastor in the said Norwegian Lutheran Church of America and took away his rights and emoluments as such pastor. That said suspension continued thereafter until the 18th day of October, 1921."

Under the decisions to which we have referred, the allegations as to conspiracy may be regarded as matters of aggravation or inducement and as not necessary to be proven. But some of the averments were of the very gist of the cause of action, and of the truth of which proof was absolutely necessary.

Plainly the action is not for slander or malicious prosecution. Its only foundation is that defendants made false and malicious statements which caused the plaintiff's suspension and the subsequent damage.

The unfortunate dissensions which had arisen in the two churches in which plaintiff had carried on his work had evidently gained much publicity. In one of the congregations he had been removed by more than a two-thirds vote. In the other a majority of the members desired his removal and a suit was pending in court to accomplish that result.

About six weeks before the statements were made on which this action was based there had been a general council of the whole church at Minneapolis. At one of the sections of this council plaintiff made the admissions and request for forgiveness already stated.

When Reverend Nordby, who was president of one of the districts, arrived at Scandinavia, a place near the scene of the trouble, he was naturally desirous of obtaining information as to the situation and of restoring harmony. At Scandinavia Reverend Nordby not only had the conversation with defendants but also conferred with four neighboring pastors of the Lutheran Church on the situation at New Hope and the conduct of the plaintiff. Two of these had been serving temporarily at New Hope. He also discussed the subject with other persons.

There is no evidence that defendants volunteered the statements relied on as actionable. The statements were made in answer to questions and without knowledge on the part of the defendants of Reverend Nordby's purpose in making the inquiries. It thus appears to be an important question whether these answers made by defendants caused the suspension of plaintiff.

Defendants' counsel asked that this issue be submitted to the jury and the request was denied. The court could not properly hold as a matter of law that these statements procured the plaintiff's suspension, and the failure to submit the question of fact to the jury was prejudicial error.

Counsel for defendants excepted to certain portions of the instructions given to the jury. On the subject of conspiracy the jury were told that the burden of proof rested

upon the plaintiff to convince them by clear and convincing evidence to a reasonable certainty by a preponderance of the evidence. This is conceded to be correct, but exception is taken to the following instruction:

"If you are convinced by the preponderance of the evidence that the statements made by *Carl Anderson* were not privileged and were made to secure the suspension of the plaintiff, answer question 3 'Yes.' "

The same instruction was given as to *Anton Anderson.*

It is argued that since the communications were conditionally privileged, a higher degree of proof of malice was required than a mere preponderance. Counsel cite several cases where actions were brought against parents or other relatives for alienation of affections, and it is urged that the same high privilege exists in communications as to church affairs as in family affairs; that parental interest in the one case and church interest in the other raise a strong presumption against malice. The following are some of the cases cited: *Hutcheson v. Peck,* 5 Johns. 196; *Ratcliffe v. Walker,* 117 Va. 569, 85 S. E. 575; *Multer v. Knibbs,* 193 Mass. 556, 79 N. E. 762. No cases are cited which are directly in point on the question here presented.

Undoubtedly the statements made in this case were conditionally privileged and there was no presumption of malice, but it is equally clear that the privilege did not extend to false and malicious statements if such statements were made. The natural solicitude of a parent for a child and the corresponding duties of the parent have been deemed a reason for requiring a greater quantum of proof than in other cases where malice is in issue.

Of course it is the familiar rule that fraud must be proved by clear and satisfactory evidence and the burden is on him who asserts it. But generally in tort actions malice may be shown by a preponderance of the evidence. In actions for slander and libel, although a conditional privilege may exist, we do not find that malice must be shown by more than a

preponderance. 18 Am. & Eng. Ency. of Law (2d ed.) 1050, 1051; *Bacon v. Mich. Cent. R. Co.* 66 Mich. 166, 172, 33 N. W. 181; *Gattis v. Kilgo,* 128 N. C. 402, 38 S. E. 931; *Bee Pub. Co. v. Shields,* 68 Neb. 750, 94 N. W. 1029. Actions for slander seem to us more nearly analogous to the case at bar than actions for the alienation of affections. When it appeared that the communications were conditionally privileged, the burden rested on plaintiff to show actual malice, but in our opinion it was only necessary to show this by a preponderance of the evidence.

After giving instructions explaining the subject of privilege, its nature and effect, the court gave the following:

"If they were not privileged, either because they were knowingly untrue or because they were maliciously made in utter disregard of facts known by *Carl Anderson* which were sufficient to demonstrate to a man having ordinary caution and intelligence that they were in all reasonable probability untrue, and such statements not being privileged were maliciously made by the said *Carl Anderson* with the intent to procure the suspension of the plaintiff, the question should be answered 'Yes.' "

The same instruction was given as to *Anton Anderson.*

We do not think this instruction can be sustained. It was not the charge that the statements were made uncautiously or negligently but that they were made falsely and maliciously. It was not the question whether men of ordinary caution and intelligence would have believed the statements to be untrue but whether these defendants so believed.

"Where the existence of a privileged occasion is established, we have seen that the plaintiff must give affirmative proof of malice, that is, dishonest or reckless ill will, in order to succeed. It is not for the defendant to prove that his belief was founded on reasonable grounds, and there is no difference in this respect between different kinds of privileged communications. To constitute malice there must be something more than the absence of reasonable ground for belief in the matter communicated. That may be evidence

Kile v. Anderson, 182 Wis. 467.

of reckless disregard of truth, but is not always even such evidence. A man may be honest and yet unreasonably credulous; or it may be proper for him to communicate reports or suspicions which he himself does not believe. In either case he is within the protection of the rule." Pollock, Torts (4th ed.) 253; *Joseph v. Baars,* 142 Wis. 390, 125 N. W. 913.

Some criticism is made by appellants' counsel of the definition of malice as given by the court, but we do not consider the objections well taken. The same is true as to the measure of damages.

Exception was taken to the admission of various items of evidence offered to prove malice. These related to statements of defendants during the dissensions in the congregation long prior to the statements complained of, and some of them were made before another controversy which had been settled. These statements were so remote as bearing on express malice at the time the statements relied on were made that in our opinion it would have been better if they had been omitted.

The testimony of Reverend Nordby that he favored reinstatement of the plaintiff in June, 1921, more than nine months after the cause of action is claimed to have arisen, was clearly inadmissible.

For the reasons that we have stated we conclude that defendants are entitled to a new trial.

*By the Court.*—Judgment reversed as to appellants, and cause remanded for a new trial.