GOLDMAN, Plaintiff-Respondent and Cross-Appellant, v. BLOOM, and another, Defendants: PERSSION, Defendant-Appellant and Cross-Respondent.

Supreme Court

*No. 76–420. Submitted on briefs May 31, 1979.—*
*Decided June 29, 1979.*
(Also reported in 280 N.W.2d 170.)

For the appellant the cause was submitted on the briefs of *Donald S. Eisenberg, Hugh J. Hayes* and *Eisenberg, Giesen & Ewers* of Madison.

For the respondent the cause was submitted on the brief of *Robert L. Elliott* and *Cook & Franke, S.C.*, of Milwaukee.

CONNOR T. HANSEN, J.   The dispute herein arose out of a series of transactions concerning a condominium in the Bahamas.  All of the parties are residents of Wisconsin, and the action was commenced by personal service.  Although a series of real estate transactions are involved, there is no documentary evidence except for some cancelled checks and some self-serving memoranda.  The testimony of the parties at trial was essentially in agreement regarding the initial transactions.

The first transaction concerned a trade of properties between Perssion and Howard Bloom, one of the defendants, in October, 1973.  Bloom transferred some

Wisconsin real estate valued at approximately $90,000 to Perssion. Perssion paid off a $60,000 mortgage on these properties and traded Bloom a condominium in the Bahamas valued at $30,000, identified as Apartment 1109, Lucayan Towers South, Lucaya, Grand Bahamas. No deed to this condominium was ever given to Bloom because Bloom told Perssion he might want to sell the condominium and would prefer to save the $900 recording fee. Perssion also loaned Bloom $20,000 which was to be secured by a mortgage on the condominium. We do not know if the mortgage was ever executed, but at any rate Bloom made some payments to Perssion and in December, 1974, the balance on this obligation of Bloom to Perssion was approximately $18,000.

In November, 1973, Goldman agreed to purchase the condominium from Bloom for $37,000. In payment of the property, Goldman transferred some Wisconsin real estate to Bloom valued at $17,500, made some payments in the succeeding months, and in late 1974 there remained a balance due on the purchase price from Goldman to Bloom of $9,000. This remaining obligation of $9,000 was to be evidenced by the execution of a note; however, the note was never executed.

Bloom gave Goldman the key to the condominium and Goldman moved in. He redecorated the apartment and furnished it. He spent $210 to have his car shipped to the Bahamas and paid a $900 fee to have the car registered. He paid the condominium fees by check to Bloom, who continued to receive the assessment bills from the condominium association. Bloom was to endorse these checks and forward them to the association.

Goldman made his first trip to the condominium in February, 1974. During his visit he was approached by Perssion who he had not met before. Goldman told Perssion that he understood that either Perssion or his wife had told one of Goldman's previous guests at the

condominium that Perssion had an interest in the condominium. Goldman testified that Perssion replied that he did have an interest but that it was not very significant and that Goldman should not be concerned. Perssion said it would be worked out with Kenneth Alles, a defendant and not a party to this appeal, who owned several condominiums in the building. Goldman testified that he told Perssion that he had been embarrassed and that he wanted the problem straightened out with the manager. He said they ultimately met with the manager and that Perssion told the manager that Goldman was the new owner and that his guests should be allowed to use the condominium. Goldman said he told the manager that Perssion was not to be admitted. Goldman said that after this meeting with the manager the bills were sent to him.

Goldman continually demanded that Bloom give him a deed to the property. At one point, he testified, Bloom told him Alles had the deed and he would get it from him when he returned to town. Bloom finally scheduled a closing at his office in Milwaukee in April, 1974. Goldman, Bloom and Perssion and Alles attended this meeting.

Goldman testified that while he and Perssion were waiting for the meeting to start he asked Perssion about his business relationship with Bloom. He said that Perssion replied that it was none of his business, that Goldman was there for a deed and that was what he was going to get. Goldman said that during the subsequent meeting he was handed a deed to the condominium, which recited that title was vested in Lowell Goldman. He said that this deed, which was written on heavy parchment paper with a gold seal and red ribbon, was signed by Bloom, Perssion and himself. He said the deed contained no contingencies or restrictions; that he had the deed in his possession after it was signed,

and that he told the others he would record it in the Bahamas the following week. He testified that Perssion and Bloom then discussed how the $900 recording fee was to be divided and finally agreed that each would pay half or $450. He said he had made the first fold in the deed and was preparing to put it in his pocket when either Perssion or Alles said it would not be necessary for him to go to the Bahamas and that Alles explained that Goldman would have trouble with the attestation required to record the deed because it had to be made by someone known in the Bahamas. Alles said he would be going there the next week and could record the deed for Goldman. Goldman then gave the deed to Alles for recording.

Goldman further testified that Bloom told him he paid Perssion the $450 that evening. No contingencies to the recording of the deed were discussed that day and no mortgages, notes or other memoranda were signed. Goldman did not request an abstract or title insurance because he understood that Bahamian title searches were expensive. He did not execute a $9,000 note to Bloom at the time because Bloom said he had told Perssion he would assign the note to Perssion, and Goldman, therefore, did not want to execute such a note until the deed was recorded. Goldman did not know at the time that Perssion claimed to have a mortgage on the property.

The testimony of Bloom substantially corroborated the testimony of Goldman. This included testimony that nothing was said in Goldman's presence about Perssion having a mortgage on the property or any other contingency. Bloom testified that Alles was present at his request because Bloom knew the deed would have to be recorded by someone known in the Bahamas. Bloom also said he gave Perssion a check for $450 that same day in payment of his one-half of the $900 recording fee. After Goldman left the meeting, the matter of the

settlement of the $18,000 obligation from Bloom to Perssion was discussed and Perssion agreed to accept a note from Goldman in the amount of $9,000, the balance due from Goldman to Bloom on the purchase price, plus security from Bloom for the remaining balance of $9,000. Nothing was said about Perssion withholding the recording of the deed until Perssion had been paid, and when Bloom left he assumed the deed would be recorded.

The testimony of Perssion in regard to the meeting was somewhat different and somewhat inconsistent. He testified that Bloom told him that he had a cash buyer for the condominium, that the mortgage would be paid and the deed given directly to the buyer to save on the recording fee, which they agreed to divide equally. He said Bloom said the buyer would turn over $9,000 in cash at the closing and that Bloom would give him a $9,000 mortgage on some other real estate. He asked for the cash and mortgage at the closing and Goldman agreed to pay him $9,000 but said he preferred to give a note to avoid a loss on stock he would have to sell to get the cash. Perssion said he agreed to take a note. Perssion testified that he gave the deed to Alles and asked him to hold it until they got the financing straightened out, and that he subsequently asked Alles to return the deed to him because he had not received Bloom's $9,000 note or $450 recording fee. He testified he did not know what happened to the deed and he assumed that he had destroyed it.

Alles testified that Perssion handed him the deed and that this deed, on its face, transferred the property to Goldman. He said he left the meeting with the deed and Perssion told him that when he had his business straightened out with Bloom and Goldman he would give him the recording fee, which, in fact, was never

given to him. He said he returned the deed to Perssion when Perssion asked for it several weeks later.

Goldman also testified that he didn't visit the condominium again after the closing, but that he did allow friends to use it. He said that about a month and a half after the closing Perssion asked him to go on a trip to the Bahamas. Goldman was unable to go but asked Perssion to take some personal belongings to the condominium for him, including wallpaper, and he gave Perssion a check to cover an arrearage on the electricity which had been caused by some confusion between the three of them. Also on an occasion after the closing Perssion asked Goldman if he could use the condominium for an overflow of guests.

Goldman said he first learned that the deed had not been recorded in June or July of 1974, and he then attempted, unsuccessfully, to contact Alles.

Bloom testified that two or three more meetings were held between himself, Goldman and Perssion after the problem arose and Perssion then took the position that he would not record the deed until he was paid off.

Bloom filed a voluntary petition in bankruptcy prior to trial. Goldman filed a claim against Bloom in bankruptcy court but Perssion did not.

The case was submitted to the jury in a special verdict. The jury found that Perssion executed a deed conveying the condominium to Goldman and agreed to have it recorded without further action on Goldman's part. The jury also found that the failure to record the deed was not a result of a conspiracy but was a determination by Perssion. The jury also awarded Goldman $6,000 compensatory damages.

The trial court found that the verdict was supported by the evidence except as to the damages award to Goldman. The court ordered Goldman to pay $9,000 to Perssion and to assign Perssion his claim in bankruptcy

against Bloom, and further ordered Perssion to transfer the condominium to Goldman. The trial court also dismissed the claim of Goldman for damages. Perssion has appealed from the judgment, and Goldman has filed a cross-appeal.

This appeal presents the following issues:

1. Whether the trial court had subject matter jurisdiction to order the transfer of property located outside of the State of Wisconsin?

2. Whether specific performance can be ordered in the absence of a written contract to convey between Perssion and Goldman?

3. Whether it was error for the trial court to submit a special verdict question inquiring whether Perssion was individually responsible for the failure to record the deed?

4. Whether Goldman was entitled to compensatory damages in addition to specific performance?

## I.

Perssion initially demurred to respondents' complaint on the ground that the trial court lacked subject matter jurisdiction because the condominium was in Bahama. The trial court overruled the demurrer. Perssion appeals from this order.

It has long been recognized that a state court may render an in personam judgment ordering a person within its jurisdiction to transfer property situated in another jurisdiction.

". . . But this legislation does not affect the doctrine which we have expressed, which rests, as we have said, on the well-recognized principle that when the subject-matter of a suit in a court of equity is within another State or country, but the parties within the jurisdiction

of the court, the suit may be maintained and remedies granted which may directly affect and operate upon the person of the defendant and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or refrain from certain acts toward it, and it is thus ultimately but *indirectly* affected by the relief granted. In such case the decree is not of itself legal title, nor does it transfer the legal title. It must be executed by the party, and obedience is compelled by proceedings in the nature of contempt, attachment or sequestration. . . ." *Fall v. Eastin,* 215 U.S. 1, 11 (1909).

A judgment for specific performance operates upon the person. *State v. Conway,* 26 Wis.2d 410, 415, 132 N.W.2d 539 (1965). The action here is to require conveyance of the condominium and not to try the legal title. This court has recognized the validity of this procedure on at least two occasions, *Dalton v. Meister,* 71 Wis.2d 504, 239 N.W.2d 9 (1976); *Bailey v. Tulley,* 242 Wis. 226, 7 N.W.2d 837 (1943). In *Dalton,* at 512 this court held that the subject matter of such an action is not the land but rather the rights claimed therein by persons over whom in personam jurisdiction exists.[1] In this case the trial court had jurisdiction.

## II.

Perssion argues that the court cannot order specific performance where there is no written agreement to convey between the parties. This argument is based upon the assertion that the deed may not have conformed to the requirements of the statute of frauds, sec. 706.02, Stats., and that the deed was not delivered. He further argues that there was no consideration from Goldman to himself and therefore he cannot be forced to convey the property.

---

[1] *See:* Annotation 32 A.L.R.3d 1330 (1970).

The trial court here recognized that in the absence of the deed there was no way to bring this agreement within the statute of frauds. However, the trial court found that the agreement reached at the closing could be enforced under sec. 706.04(3) (a), Stats.:

*"706.04* **Equitable relief.** A transaction which does not satisfy one or more of the requirements of s. 706.02 may be enforceable in whole or in part under doctrines of equity, provided all of the elements of the transaction are clearly and satisfactorily proved and, in addition:
"....

*"(3)* The party against whom enforcement is sought is equitably estopped from asserting the deficiency. A party may be so estopped whenever, pursuant to the transaction and in good faith reliance thereon, the party claiming estoppel has changed his position to his substantial detriment under circumstances such that the detriment so incurred may not be effectively recovered otherwise than by enforcement of the transaction, and either:
"(a) The grantee has been admitted into substantial possession or use of the premises or has been permitted to retain such possession or use after termination of a prior right thereto; . . ."

This court has held that where no writing exists there may still be a valid agreement to transfer land if the provisions of sec. 706.04, Stats., are met. *Krauza v. Mauritz,* 78 Wis.2d 276, 279, 254 N.W.2d 251 (1977). However, the elements of the transaction must be proved by clear and satisfactory evidence. *Id.* at 280. There must also be a finding of substantial detriment. *Id.* at 282.

The trial court found that there was no dispute that the deed had been executed and found that the only factual dispute was regarding the agreement reached at the closing. It found that the jury, in its advisory verdict, which the trial court accepted and approved

on this issue, had resolved the dispute in favor of Goldman by finding that Perssion had executed the deed and agreed to have it recorded without any further conditions. This conclusion is supported by both Goldman's and Bloom's testimony. Further, Perssion's own testimony is unclear as to whether he made his intent regarding the recording clear to either Bloom or Goldman. The jury resolved the credibility issue and the evidence of the agreement is clear and satisfactory.

The trial court further found that Goldman had been admitted to substantial possession of the premises. The trial court also found that Goldman had relied to his detriment on the promise of Perssion that the deed would be recorded. The evidence is clear that Goldman remained in possession of the condominium after the closing with Perssion's knowledge and consent and that he made substantial expenditures connected with it. He continued to make payments to Bloom after the closing and was delayed from proceeding against Bloom by his belief that the deed had been recorded. The agreement was appropriately enforced under sec. 706.04, Stats., and the requirements of the statute of frauds are irrelevant.

### III.

Perssion contends that the complaint alleged only conspiracy and that the jury's finding that there was no conspiracy entitled appellant to a non-suit.

The trial court agreed, and we believe correctly so, that the complaint did not adequately state an alternative cause of action to the conspiracy theory but concluded that the question whether the failure to record the deed was Perssion's determination alone was a logical and reasonable possible alternative based upon the proof presented at trial.

In his complaint Goldman alleged the operative facts as given in his testimony above. He then alleged:

"12. Upon information and belief, thereafter Alles did not record the deed and, rather, turned the executed and sealed deed over to Perssion who presently holds the executed and sealed deed and refuses to turn it over to the plaintiff, though it is his rightful property.

"13. Upon information and belief, at the time of the closing at Bloom's office, the plaintiff was advised that he was to receive an unqualified and unrestricted and unencumbered validly executed and sealed deed to the property in question and that the deed executed on that date did convey such property unencumbered to the plaintiff.

"14. The plaintiff reasonably relied upon such material representations of the defendants.

"15. The defendants knew or should have known that such representations made to the plaintiff at such time were false.

"16. Upon information and belief, the defendants have conspired in an intentional action to defraud the plaintiff of possession of the executed and sealed deed from Perssion to Bloom to the plaintiff conveying the property in question to the plaintiff and, despite demand made upon the defendants, continue to conspire to defraud the plaintiff from rightful possession of such deed."

The trial court determined that the allegation that Perssion refused to return the deed to Goldman gave sufficient notice to Perssion of his individual responsibility.

Section 802.09 (2), Stats., reads:

"*(2)* AMENDMENTS TO CONFORM TO THE EVIDENCE. If issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any

party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

A trial court may allow a variance between the pleadings and the proof provided the variance does not mislead the opposing party to his prejudice. *Steiger v. Nowakowski*, 67 Wis.2d 355, 227 N.W.2d 104 (1975). The trial court has broad discretion to allow a variance when the new issue arises out of the same occurrence on which the original pleading was based. *McGowan v. Story*, 70 Wis.2d 189, 234 N.W.2d 325 (1975). The complaint will be treated as amended, even though no amendment has been requested, where the proof has been submitted and accepted. *Wulfers v. E. W. Clark Motor Co.*, 177 Wis. 497, 188 N.W. 652 (1922). The United States Supreme Court has said that the purpose of the rule is to insure that the parties are fairly apprised of the nature of the questions involved. *Nash v. Towne*, 72 U.S. 689 (1866).

Perssion correctly argues that respondent brought an action *for* specific performance, not an action *based on* specific performance. Specific performance is an equitable remedy, not a cause of action. Goldman also correctly observes that a consummated conspiracy is not a cause of action, but rather only the method by which a civil wrong has been committed. *Onderdonk v. Lamb*, 79 Wis.2d 241, 246, 247, 255 N.W.2d 507 (1977).

The complaint here alleged facts which indicated a completed conspiracy to defraud or to breach the con-

tract. The operative facts which each defendant had to be prepared to counter were that he agreed to record the deed and failed to do so. These facts had to be dealt with whether the complaint alleged conspiracy or individual responsibility.

This court has recognized that the failure to prove conspiracy, once alleged, does not preclude recovery where the plaintiff is able to prove that he has been damaged by one or more of the defendants. *Martin v. Ebert*, 245 Wis. 341, 344, 345, 13 N.W.2d 907 (1944); *Kile v. Anderson*, 182 Wis. 467, 472, 473, 196 N.W. 762 (1924).

Perssion was not prejudiced by submission of a special verdict question inquiring whether he alone was responsible for the deed not being recorded. Further, the record is devoid of any indication that Perssion objected to the form of the special verdict. Where proof is received without objection the variance will not be deemed material. *In re Estate of Meister*, 71 Wis.2d 581, 239 N.W.2d 52 (1976).

Perssion also objected to the first question in the special verdict:

"1. Did the defendant, Perssion, execute a deed for the condominium in favor of the Plaintiff, Goldman, and agree to have the deed recorded without further action by Goldman prior to such recording?"

contending that it was duplicitous and misleading because it could not be determined which part the jury answered in the affirmative. The trial court correctly found that the appellant had waived the objection by failing to object to the question before it was submitted to the jury. *Dutcher v. Phoenix Ins. Co.*, 37 Wis.2d 591, 603, 155 N.W.2d 609 (1968); *Szymon v. Johnson*, 269

Wis. 153, 69 N.W.2d 232, 70 N.W.2d 5 (1955). Further, the trial court concluded the question was not duplicitous in light of its wording and the instructions given. Clearly the jury could not have answered the question "Yes" unless it had answered both parts of the question in the affirmative. The trial court did not err in submitting the special verdict questions.

## IV.

Finally Goldman cross-appeals, contending that he is entitled to the damages the jury awarded him.

He attempted to prove the following damages:

(1) Loss of $500 on a contract to allow a friend to use the condominium when the friend was refused admittance;

(2) Loss of interest on the money and property he transferred to Bloom;

(3) Loss of use of the condominium for 30 days each year at a value of $75 per day.

The trial court refused to allow damages because the evidence reflected that Goldman had been in possession of the condominium from November of 1973, at least through August of 1975, when he started the action. Goldman did not testify as to when he was put out of possession of the condominium. He could not be entitled to loss of use of the money he invested while he was in possession of the premises. *Estreen v. Bluhm*, 79 Wis.2d 142, 156, 157, 255 N.W.2d 473 (1977). The trial court further concluded that Goldman's evidence regarding loss of rent was speculative because he failed to prove that he would have and could have rented the condominium for a specific price or for a specific time. The trial court finally concluded that damages in addition to specific performance would be inequitable under the facts of this case.

A court of equity has the discretion to fashion the remedy as necessary to deal equitably with the parties. *American Med. S., Inc. v. Mutual Fed. S. & L.,* 52 Wis.2d 198, 205, 188 N.W.2d 529 (1971) ; *Venisek v. Draski,* 35 Wis.2d 38, 150 N.W.2d 347 (1967). The trial court did not abuse its discretion in denying damages.

We have considered all of the arguments advanced by the respective parties to this appeal and concluded the order and judgment of the trial court should be affirmed.

*By the Court.*—Order and judgment affirmed.