Larry JENSEN, Plaintiff and Appellant,

v.

John J. WEYRENS and Catherine J. Weyrens, Defendants, Third–Party Plaintiffs and Appellees,

v.

Dennis S. GROSS and Reynolds Realty and Insurance Company, Third–Party Defendants and Appellees.

No. 17224.

Supreme Court of South Dakota.

Argued March 19, 1991.

Reassigned June 4, 1991.

July 31, 1991.

William E. Coester, Milbank, for plaintiff and appellant.

Nancy J. Turbak, Watertown, for defendants, third-party plaintiffs and appellees Weyrens.

Raymond M. Schutz of Siegel, Barnett & Schutz, Aberdeen, for third-party defendant and appellee Gross.

T.F. Martin of McCann, Martin & McCann, Brookings, for Gilbert, Hinsvark & Saltee.

MILLER, Chief Justice (on reassignment).

A contract-for-deed purchaser brought suit against seller because of an unresolved boundary dispute. The circuit court ordered specific performance after a court-ordered survey resolved the boundary dispute. Purchaser appeals the trial court's allocation of the survey cost, denial of attorney fees and failure to set off purchaser's claimed damages against his contract obligations. We affirm.

### Facts

In August, 1980, Weyrens purchased a parcel of improved land (contract property) on Lake Cochrane in Deuel County, South Dakota, under a contract for deed from Gross. Weyrens' final installment payment was due September 1, 1984.

On October 8, 1983, Jensen purchased this property by a contract for deed from Weyrens, with Jensen's final installment due April 1, 1989.

By the time of this second contract for deed, Gross, Weyrens and Jensen were all aware of a potential problem with the lot lines of the contract property, but neither Gross nor Weyrens believed the problem, if any, to be a serious one. Jensen understood the boundary problem to be nothing more than a possible 15–foot discrepancy in the location of the lot lines, which would not affect the improvements on the contract property. Jensen required Weyrens to guarantee him a 115–foot shoreline in any event. (See footnote 2). Jensen signed a "purchase agreement" on September 9, 1983, which expressly guaranteed Jensen 115 feet of shoreline and recited that any expense involved in correcting the boundary discrepancy would be borne by Weyrens. However, Weyrens did not sign this "purchase agreement" and the actual contract for deed signed by Weyrens and Jensen one month later makes no mention of any boundary problem or any allocation of expenses for its correction.

On May 1, 1984, Jensen leased the contract property to another for a term of five years. Two months later, Jensen was informed by a Lake Cochrane neighbor that three sisters named Gilbert, Hinsvark and Saltee (the sisters) were claiming to own a lot which straddled what Jensen and the neighbor assumed was the line between their properties. If true, this claim would affect the placement of the lot lines and could substantially cut into Jensen's 115 feet of anticipated shoreline. After Jensen informed Weyrens that the boundary problem could be more significant than anyone suspected, Weyrens withheld from Gross the final contract payment due September 1, 1984.

In October, 1984, Gross obtained a survey of the contract property which revealed a problem with the lot lines substantially in excess of the discrepancy previously anticipated by Gross, Weyrens and Jensen.[1]

By early 1986, Jensen's lessee prematurely terminated his five-year lease, claiming that conflicts with the sisters over the boundary line effectively deprived him of the use of the contract property. Subsequently, Jensen ceased making payments on his contract with Weyrens.

On June 3, 1988, Weyrens filed an action to quiet title (# 88–1026). Jensen counterclaimed against Weyrens and cross-claimed against Gross, the sisters and others, alleging the existence of a boundary dispute and requesting (1) a court-ordered survey of the contract property, (2) damages for loss of use of the contract property, and (3) other costs and attorney fees.

The following month, Jensen filed suit against Weyrens (# 88–1030), seeking specific performance of the Weyrens–Jensen contract or, in the alternative, damages. Weyrens counterclaimed for cancellation or reformation of the contract plus damages and costs, and brought a third-party com-

---

1. The results of this survey would later prove to be wrong. *See* footnote 2.

plaint against Gross. On August 12, 1988, the court ordered the consolidation of suits # 88–1026 and # 88–1030 and appointed a surveyor. Ten months later, the report of the surveyor placed the boundaries of the contract property roughly where Gross, Weyrens and Jensen originally anticipated[2] and resolved the central conflict in the case to the apparent satisfaction of all parties.

On April 17, 1990, following trial by affidavit, the circuit court issued findings of fact and conclusions of law in # 88–1026, which quieted title to the contract property without opposition. On May 24, 1990, the court issued findings of fact and conclusions of law in # 88–1030, ordered specific performance of the Weyrens–Jensen contract, allocated the cost of the court-ordered survey, fifty percent to Jensen and fifty percent to Gross, Weyrens and the sisters, and denied all pecuniary relief to Jensen.

Jensen appeals, claiming the court erred in

(1) allocating 50% of the survey cost to Jensen and denying Jensen recovery of other costs and attorney fees; and

(2) failing to reduce the amount Jensen owes Weyrens under the contract for deed by the costs and consequential damages Jensen claims.

## Scope of Review

Jensen does not claim that any of the court's factual findings are clearly erroneous. All parties appear to concede that this is essentially an action in equity. "[T]he equitable remedy of specific performance is addressed to the sound discretion of the trial court." *Berendes v. Berendes*, 385 N.W.2d 119, 121 (S.D.1986). Therefore, this court will not disturb the equitable determinations of the trial court unless we find that the trial court abused its discretion. *Wiggins v. Shewmake*, 374 N.W.2d 111 (S.D.1985). Under the abuse of discretion standard, we do not re-try the case de novo or interfere with the court's ruling to reach a result we happen to like

better. Rather, we determine that an abuse of discretion occurred only if no "judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion." *Estate of Pejsa*, 459 N.W.2d 243, 245 (S.D.1990); *Estate of Smith*, 401 N.W.2d 736 (S.D.1987).

### 1. *Survey Cost Allocation*

SDCL 21–40–8 provides:

The court shall make such order respecting the costs and disbursements including the costs and expenses of a survey thereof and of the establishing of any markings of such boundaries between the parties to such action as it shall deem just.

In this case, the court deemed it just to allocate fifty percent of the cost of the court-ordered survey to Jensen and to divide the remaining fifty percent of the cost among Weyrens, Gross and the sisters.

SDCL 19–15–16 provides that the initial disbursement for court-appointed experts shall "be paid in equal parts by the opposing litigants ... and thereafter assessed as costs of the suit." By its terms, this statute does not restrict the court's equitable discretion over the ultimate assessment of costs. Here the court's ultimate assessment is consistent with the initial allocation of expenses prescribed by SDCL 19–15–16, *i.e.*, half to plaintiff Jensen and half to defendants Weyrens, Gross and sisters.

The record supports this allocation of the cost of the survey. The trial court specifically noted that, under SDCL 21–40–8, the survey costs are to be allocated between the parties "on an equitable basis." It analyzed the arguments of all parties as to their positions, asserting specific "equitable allocations." In explaining its ultimate determination for the allocation, the trial court stated (in its memorandum decision, incorporated into the findings):

*No one party is entirely to blame or blameless in this matter.* Jensen is cor-

---

2. The improvements on the contract property are 80 feet from the improvements on the neighboring property. The final, unchallenged survey places the boundary line roughly midway between the improvements on these two properties and secures for Jensen 115 feet of shoreline.

rect in contending that if he would have accepted the sisters' offer, he would have had less than 115 feet of shoreline, measured according to Johnson's plat. The sisters' settlement proposal also ignores the fact that although the immediate boundary dispute between the parties may have been resolved, the boundary question would have lingered and could have arisen in future transfers. The current plat establishes judicial monuments pursuant to SDCL 21–40–6 so that all parties and their future grantees are assured of where the boundaries are.

*Weyrens knew that there was a boundary dispute when he sold the property to Jensen; he guaranteed 115 feet of shoreline, and if there were any problems he was to solve them at his expense.* Gross agreed to give Weyrens peaceable possession of the property during the contract term, *and to deliver good and sufficient warranty deed* in performance of the contract. As there were persons claiming some of the same property, there was a constructive eviction of Weyrens and Jensen which was a breach of Gross' contract warranties. (Citations omitted.)

*Both Gross and Weyrens have limited benefit by the outcome of this litigation,* because they are held to the contract sale prices. After all is said and done, they are both able to deliver good title to their purchasers.

*Jensen has accrued the benefit of resolution of a boundary dispute of which he was aware when he entered into the contract, and he now has 115 feet of valuable lake front property and assured boundaries. He was inflexible in his settlement negotiations; his insistence that the other parties bear the whole cost of resolution of the matter led to extra legal expense for all parties.*

The sisters are in possession of a lot in which they have assured boundaries and to which they hold title, assuming that their ownership interest is borne out by the descriptions in the deeds of record. Although this lot is too narrow for resale as a unit upon which improvements may

be built, it does have value to them as an addition to the Ramige lot. (Emphasis added.)

From reading the foregoing determination by the court, coupled with all of the other recitations in both the memorandum decision and findings of fact and conclusions of law, we believe that the trial court adequately articulated a sound basis for the allocation of the survey costs. Clearly, there was no abuse of discretion. *Wiggins, supra.*

### 2. *Attorney Fees*

█ " '[T]he taxation of costs was unknown to the common law, and *the courts are without the inherent power to tax costs.* The authority to tax such costs should not be implied, but must rest upon a clear legislative grant of power to do so.' " *Lowe v. Steele Const. Co.,* 368 N.W.2d 610, 615 (S.D.1985) (citation omitted).

█ Under SDCL 15–17–1, "certain sums ... termed 'costs' " may be granted to the prevailing party by the court. SDCL 15–17–7 provides in part: "The court may allow attorneys' fees as costs for or against any party to an action only in the cases if it is specifically provided by statute[.]"

There is no statute in South Dakota specifically providing for attorneys fees in actions such as this. Therefore, the trial court properly required Jensen and the other parties to pay their own attorney fees.

### 3. *Set-off Against Jensen's Contractual Obligation*

The trial court's order to Weyrens to specifically perform the contract for deed also required Jensen to perform his obligations by paying Weyrens the principal and accrued interest owed as of the date Jensen stopped making installment payments: $13,712. *See* SDCL 21–9–4. Jensen claims the court abused its discretion by failing to offset the damages Jensen claims as a result of Weyrens' breach of the contract for deed. Specifically, Jensen wants his contract obligations reduced by (1) three years' lost rent from the prema-

turely terminated five-year lease, and (2) the sums Jensen paid or owes in taxes, interest, attorney fees and insurance.

██ Except for attorney fees (see Issue 2), "a court sitting in equity may award pecuniary compensation when the decree of specific performance does not provide full and complete relief." *Berendes,* 385 N.W.2d at 121; *Wiggins,* 374 N.W.2d at 116. The general rule is that a court of equity may award pecuniary compensation in addition to specific performance if necessary to restore the injured party to his position but for the breach. 71 Am.Jur.2d *Specific Performance* §§ 216, 217 (1973). However, this rule contemplates a situation in which the seller breached the contract by withholding possession of the property from the purchaser. *Id.,* § 219. Throughout this case, Jensen had undisputed possession of the improvements on the contract property and most of the bargained-for shoreline. "[I]f the purchaser [was] in possession of the property throughout the delay ... he is chargeable with interest on the purchase price during the delay[.]" *Id.* § 219. Although Jensen's possession of a portion of his land was under challenge until the court resolved the dispute to his satisfaction, "specific performance *with compensation* will be refused a vendee where it would be entirely impracticable to ascertain what sum of money would be an adequate compensation under the circumstances of the case." *Id.,* § 216 (emphasis added). Simply put, specific performance provides an adequate remedy where an award of additional pecuniary compensation would be largely speculative or would put the injured party in a better position than he would be otherwise. *See, e.g., Fletcher v. Jones,* 314 N.C. 389, 333 S.E.2d 731, 738 (1985); *Rusiski v. Pribonic,* 511 Pa. 383, 515 A.2d 507, 512–513 (1986); *Goldman v. Bloom,* 90 Wis.2d 466, 280 N.W.2d 170, 177–178 (1979).

██ A final consideration is that in his initial complaint in suit # 88–1030, Jensen sought specific performance or money damages *in the alternative.* The court granted Jensen specific performance. Gross states, and Weyrens implies, that in view of the alternative pleading, it would be "inconsistent" for the court to grant Jensen both specific performance and money. This is not the case. "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." SDCL 15–6–54(c). The technical form of Jensen's pleadings did not limit the court's equitable discretion to award money compensation in addition to specific performance had the court determined it necessary to Jensen's full relief. However, the fact that Jensen himself pleaded the two remedies in the alternative, rather than cumulatively, was a factor the trial court could consider in its equitable determination of Jensen's full relief. Even under SDCL 15–6–54(c), the relief granted by a court of equity *"must be based upon the facts alleged in the pleadings and justified by the proof at trial."* *Baldwin v. First Nat. Bank of Black Hills,* 362 N.W.2d 85, 90 (S.D.1985) (emphasis original) (citing *Miller v. Scholten,* 273 N.W.2d 757, 759 (S.D.1979); *American Property Services v. Barringer,* 256 N.W.2d 887, 892 (S.D.1977)). Here, the court concluded that Jensen would not be entitled to damages because he failed to meet his burden of proof as to the damages actually suffered and failed to mitigate damages.

Under these facts, we find no abuse of discretion in the trial court's decision to award specific performance without money compensation.

Affirmed.

WUEST and HENDERSON, JJ., concur.

SABERS and AMUNDSON, JJ., concur in part and dissent in part.

SABERS, Justice (concurring in part and dissenting in part).

I respectfully dissent on the survey cost allocation because the trial court failed to give effect to its own key findings of fact. They are:

9. In September of 1983, Plaintiff Jensen purchased the property from Defendant Weyrens on a Contract for Deed. It was recited in the purchase agree-

ment, that if the property description was incorrect, *that it would be corrected at Weyrens' expense;* and that Jensen was guaranteed 115 feet of shoreline.

\* \* \* \* \* \*

32. Defendant Weyrens knew that there was a boundary dispute when he sold the property to Jensen; he guaranteed 115 feet of shoreline and if there was a problem, *he was to solve the problem at his expense.*

(Emphasis added). In other words, it appears that the court found as a fact that, as between Weyrens and Jensen, Weyrens had an obligation[1] to pay the cost of resolving the boundary dispute if it was a problem.

Weyrens attacks the validity of the "purchase agreement" which required Weyrens to assume the cost of any necessary boundary correction. Weyrens points out that the purchase agreement offered in evidence bears only Jensen's signature and that, in any event, its terms are superseded by the contract-for-deed, since "the parties naturally and normally would have included any agreement to [allocate boundary correction costs] in the written contract." *Lanning Constr., Inc. v. Rozell,* 320 N.W.2d 522, 524 (S.D.1982); SDCL 53–8–5.

The fact remains that the court, as finder of fact, determined that Weyrens was responsible to pay for resolving the known boundary discrepancy should it become "a problem." Weyrens' failure to object to this finding of fact or this determination or to file a Notice of Review upon Jensen's appeal waived any objection to the finding, and it is now the law of the case. *Johnson v. John Deere Co.,* 306 N.W.2d 231, 239 (S.D.1981); *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 258 (S.D.1976).

In reviewing all the findings and the entire record, as we must, we cannot determine whether the trial court gave any effect to Finding of Fact 9 or 32. "It is not the province of this court to ... amend findings[.]" *Nilsson v. Krueger,* 69 S.D. 312, 9 N.W.2d 783, 787 (1943). It is for the trial court to make adequate findings to enable us to make a meaningful review. One of the chief purposes of findings of fact is "to aid the appellate court in reviewing the basis for the trial court's decision[.]" *Heikkila v. Carver,* 416 N.W.2d 591, 592 (S.D.1987) (*citing* J. Moore & J. Lucas, 5A Moore's Federal Practice ¶ 52.-06[1] (1987) and C. Wright & A. Miller, 9 Federal Practice and Procedure § 2571 (1971)). Accordingly, "the appellate court may remand for ... further findings" if necessary to a meaningful review of the decision. *Heikkila v. Carver, supra. See also Reese v. Henke,* 286 Minn. 145, 174 N.W.2d 690, 693 (1970) (appellate court unable to determine from the record the correct allocation of judgment award remands for additional findings).

Therefore, we should reverse and remand to the trial court for further findings on the nature of the obligation Weyrens owed to Jensen and what effect, if any, that obligation had on the court's ultimate allocation of the survey cost.[2]

AMUNDSON, J., joins this special writing.

1. Although one might argue that the court's Finding of Fact 9 is more of a recitation than a finding, the same cannot be claimed as to Finding of Fact 32. In addition, the April 19, 1990 memorandum opinion, which was incorporated by reference in Finding of Fact 38, provides in part that "if there were *any* problems [Weyrens] was to solve them at his expense." (Emphasis added).

2. This would produce a fairer result than either of the available alternatives: ignore the trial court's finding, as both the trial court and the majority opinion have done, or give immediate effect to the trial court's finding and make Weyrens "solve the problem at his expense" by reimbursing Jensen for his allocated share of the survey cost in the amount of $3,696.20.