SCHICKER d/b/a SCHICKER LIVESTOCK TRANSPORT COMPANY, Plaintiff and Respondent, v. LEICK, Defendant and Appellant: BRIENAN and another, Defendants and Respondents.

*No. 23. Argued September 30, 1968.—Decided October 29, 1968.*
(Also reported in 162 N. W. 2d 66.)

For the appellant there was a brief by *Byrne, Bubolz, Spanagel & Pfankuch* and *Ruth J. Weber*, all of Appleton, and oral argument by *Miss Weber*.

For the plaintiff-respondent there was a brief by *Holden, Halvorsen & Bjork* of Sheboygan, and oral argument by *Peter A. Bjork*.

For the defendants-respondents there was a brief by *Klueter, Larson & MacKenzie* of Wausau, and oral argument by *H. R. Klueter*.

HANLEY, J. The issue before us on this appeal is whether the liability of Sylvester Leick can be determined by summary judgment.

In *Bolen v. Bolen* (1968), 39 Wis. 2d 91, 94, 158 N. W. 2d 316, this court most recently discussed summary judgment:

> "Summary judgment is a drastic remedy. But where there is no issue of fact that should be tried or where there is an issue of law that can be determined so as to conclude the case, summary judgment should be used. . . ."

Here we must determine whether under any construction of the facts contained in the affidavits submitted, the defendant can be held to owe a duty to users of the highway.

Every cause of action in tort must have three elements: A duty; a breach of that duty; and resulting damages. Whether there is a duty is a question of law for the court. Here the facts which allegedly lead to the duty are agreed

upon.[1] Consequently a question solely of law is presented to the court. Summary judgment is a proper remedy since a decision by this court that no duty arises out of the submitted facts would terminate this lawsuit. If we determine that a duty does exist, the factual questions relating to breach of duty and damages remain to be decided at trial.

It is defendant Leick's contention that he was entitled to use the public highways as a member of the general public and that he had no duty to prevent or to remove or to warn of the presence of dirt falling from the wheels of his vehicle onto the highway.

Plaintiff, on the other hand, contends that a duty arises from two sources:

1. Sec. 346.94 (5), Stats.,[2] and
2. the common law.

### Statutory Duty.

This court in a footnote to *Kalkopf v. Donald Sales & Mfg. Co.* (1967), 33 Wis. 2d 247, 147 N. W. 2d 277, indicated that sec. 346.94 (5), Stats., was a safety statute in respect to the interest protected, namely, " 'vehicle or part thereof.' " In that opinion the court stated at page 257:

". . . the purpose of the statute was to protect vehicles or parts of vehicles from foreign substances on the highway . . . ."

Violation of a safety statute can be negligence per se. *Kalkopf v. Donald Sales & Mfg. Co., supra;* Restatement,

---

[1] Where the facts which lead to the alleged duty are in dispute, it is the function of the jury to determine the factual questions. However, the trial court must still decide the legal question of duty by assuming that the facts will be decided most favorably to the party opposing summary judgment.

[2] "(5) PLACING INJURIOUS SUBSTANCE ON HIGHWAY. No person shall place or cause to be placed upon a highway any foreign substance which is or may be injurious to any vehicle or part thereof."

2 *Torts* 2d, pp. 25–32, secs. 286 and 288; 2 Harper and James, *Law of Torts,* p. 997, sec. 17.6. Similarly, if a person violating the safety statute was in a class of persons that the safety statute sought to regulate, that person should be held to have a duty to the class of persons or the type of property which the safety statute seeks to protect.

Here the safety statute specifically states that "no person" is the class of persons whose conduct the statute seeks to regulate. It further states that "vehicle or part thereof" is the type of property which the statute seeks to protect. "No person" obviously includes the appellant here.

Before this statute creates a duty, however, it must be determined that mud is a substance foreign to a highway and that mud "is or may be injurious to any vehicle or part thereof."

In *Cable v. Marinette County* (1962), 17 Wis. 2d 590, 592, 117 N. W. 2d 605, this court considered whether "loose dirt which varied from nothing to two inches in depth" constituted an insufficiency in the condition of the highway. It was held that the determination of an insufficiency was generally a question of fact for the jury.

We could likewise hold that it is a jury question whether mud is a substance foreign to a highway. Whether or not mud is a foreign substance would seem to depend upon weather conditions, location of the highway (city or rural), surface of the highway, or any other similar condition. However, we think that as a matter of law, mud could not be a substance foreign to a highway in a rural area.

We conclude that sec. 346.94 (5), Stats., does not create a statutory duty in this type of situation under any circumstances. We believe this section should be limited to foreign substances causing direct injury to vehicles, such as glass, nails, large stones, and similar substances.

It would create an unreasonable burden for farmers and others if any mud deposited on a highway led to liability.

### Common Law Duty.

We find one case which squarely considered the duty of an abutting landowner to the other users of the highway where mud was deposited on the pavement. In *Welch v. Amalgamated Sugar Co.* (D. C. Idaho 1957), 154 Fed. Supp. 3, the defendant operated a beet dump. The surface of the highway adjacent to the exit of the beet dump was covered with mud. The plaintiff alleged that the mud had been dropped on the highway by the trucks which left defendant's property and that a subsequent rain had created a slippery condition which caused the plaintiff to lose control of his vehicle and sustain damages. The defendant moved for summary judgment. In denying the defendant's motion the court stated:

"The first, second, third, and fifth grounds of defendant's motion, all, in effect, raise the question of whether the defendant had the duty to maintain the surface of the property at its beet dump in such a condition as to avoid creating a hazard to traffic on the abutting highway. If the defendant had no such duty to travelers on the highway, then the plaintiff has failed to state a claim upon which relief can be granted and the defendant's motion must be granted.
" . . .
"The duty of the abutting owner to travelers on the highway has been characterized in Vol. 2, Shearman & Redfield, Negligence, sec. 346, as follows:
" 'The owner, much less a mere occupant, of land fronting on a highway owes no duty, as such, to repair any part of the highway, or otherwise make it safe for travel. . . .
" 'The extent of his (abutter's) obligation, with reference to adjacent highways, is to use and keep his own premises so as not to render such highways unsafe for

ordinary travel, culpably failing in which he is liable to travelers thereon.'

"The alleged facts here, if true, would constitute a use of the defendant's premises by the defendant so as to render the abutting highway unsafe to travelers thereon." *Welch v. Amalgamated Sugar Co.*, supra, at pages 4 and 5.

The court went on to say in that case, on page 6:

". . . there was a duty on the part of defendant to maintain its premises so as not to create a hazard to travelers on the highway. Whether such duty was breached and the defendant liable in damage must be determined on the trial of the issues."

Other courts have considered that one who uses a highway has a general obligation to leave it free of dangerous conditions:

". . . Anyone working upon or using a highway is under a duty to refrain from creating conditions which are dangerous to other persons using the same, or to warn of dangerous conditions should the same be created." *Strakos v. Gehring* (Texas, 1962), 360 S. W. 2d 787, 803, 804.

"The rule adopted in this state is: '. . . when one engaged in the lawful use of the highway causes an obstruction to be placed upon it in such a manner as to be dangerous to traffic, he must use ordinary care to prevent injury to others where he knows that said obstruction is calculated to do injury to travelers upon said highway. The negligence in such a case consists of having placed an obstruction upon the street, and leaving it in such a manner as will be dangerous to others using the street.' *Simonsen v. Thorin*, 120 Neb. 684, 234 N. W. 628, 81 A. L. R. 1000.

"An obstruction, in the sense here used, includes anything which will interfere with the public's reasonable use of the highway easement." *Shupe v. County of Antelope* (1953), 157 Neb. 374, 377, 59 N. W. 2d 710.

We think that the language of the cases cited above goes too far as applied to the facts of this case. A farmer should not be required to maintain his premises

so that no mud is dragged onto the highway. However, once he realizes or should realize that he has created a dangerous condition, the farmer should have an obligation to proceed reasonably to correct it. Restatement, 2 *Torts* 2d, p. 132, sec. 321, details the duty which we believe a farmer should be held to in this situation:

"Duty to Act When Prior Conduct is Found to be Dangerous

"(1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.

"(2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk."

In applying the above rule to the case at bar we hold that the farmer performed an innocent act in causing mud to be deposited on the highway. Of itself this could hardly be termed an obstruction. However, when it began to rain, it can reasonably be contended that the farmer should have realized a potential danger. Nevertheless, the court need not decide that issue because here the farmer was put on actual notice of the dangerous condition by the police officer. The defendant did attempt to remedy the situation. In our opinion he had a duty to do so. Whether or not his conduct was reasonable in correcting the situation, whether or not he should have sprinkled sand or another abrasive over the slippery area, whether or not he should have set up a warning device of some kind, and other issues of fact are for the jury to decide at the trial. We conclude that the trial court properly denied defendant Leick's motion for summary judgment.

*By the Court.*—Judgment affirmed.