Kenneth LLOYD, Plaintiff,

v.

Irma LOEFFLER, Alvin F. Loeffler, Bonnie Loeffler a/k/a Bonnie Loeffler McMahan, and Earl Ray McMahan, Defendants.

Civ. A. No. 80–C–560.

United States District Court, E. D. Wisconsin.

July 28, 1981.

Timothy J. Strattner, Milwaukee, Wis. and Carole S. Gailor, Fairfax, Va., for plaintiff.

Lawrence J. Haskin, South Milwaukee, Wis., for defendants Irma Loeffler and Alvin F. Loeffler.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

In this action the plaintiff Kenneth Lloyd, the father and parent entitled to custody of Carol Caren Lloyd, a/k/a Carol Renee Loeffler, alleges that the defendants conspired to abduct his minor child and to deprive him of the society and companionship of his child, in violation of a custody decree of the State of Maryland. Named as defendants are Bonnie Loeffler McMahan, a/k/a Bonnie Theresa Loeffler, the mother of the minor child; Earl Ray McMahan, the husband of Bonnie Loeffler McMahan; Al-

vin F. Loeffler, the father of Bonnie Loeffler McMahan and the grandfather of the minor child; and Irma Loeffler, the mother of Bonnie Loeffler McMahan and the grandmother of the minor child. The plaintiff further alleges that as a result of defendants' willful and deliberate violation of the custody decree, he has incurred substantial expenses in attempting to locate and recover the custody of his minor child as well as suffered severe emotional and mental strain and anguish. This court has jurisdiction pursuant to 28 U.S.C. § 1332.

Presently before the court is a motion for summary judgment brought by the defendants Alvin F. Loeffler and Irma Loeffler (the "Grandparents"). This motion raises a question, apparently one of first impression, of whether Wisconsin would recognize a cause of action in tort against those who unlawfully interfere with custody of a parent entitled to such custody. For the reasons that follow, it is my opinion that Wisconsin would recognize such cause of action and that the Grandparents' motion for summary judgment should be denied.

■■■■ Summary judgment is appropriate only if it appears that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure; *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir. 1976). The burden of proof is upon the moving party to show that there is no genuine issue of material fact in dispute, *Rose v. Bridgeport Brass Co.*, 487 F.2d 804, 808 (7th Cir. 1973), and if after a review of the proofs submitted on a summary judgment motion any doubt remains as to the existence of a genuine issue of material fact, then that doubt must be resolved against the movant. *Zahora v. Harnischfeger Corporation*, 404 F.2d 172, 175 (7th Cir. 1968). Thus, by entering summary judgment, the Court is, in effect, concluding that based on the evidence upon which the plaintiff intends to rely at trial, no reasonable jury could return a verdict for the plaintiff. *Murray v. City of Chicago*, 634 F.2d 365, 366 (7th Cir. 1980).

## I. FACTS

As to the factual background for consideration of the question whether summary judgment is appropriate, the record reveals the following relevant undisputed facts.

Carol Caren Lloyd, the minor child, was born on April 12, 1978. Her mother and father were not married at her birth and were never married thereafter. On March 31, 1979, the child's mother married Earl Ray McMahan. A hearing on the issue of the custody of the child was held in the Circuit Court of Prince George's Court, Maryland, on April 24 and 25, 1979. On April 25, 1979, custody of the child was awarded to the father with visitation rights to the mother. Present during the entire custody hearing and present when the court announced its custody decision was the grandmother, Irma Loeffler. The grandfather, Alvin Loeffler, was told of the decision regarding the plaintiff's custody by telephone.

On June 21, 1979, the mother informed the father that she would commence her summer visitation with the minor child on July 20, 1979; that she would take the minor child to the home of the Grandparents in South Milwaukee, Wisconsin; and that she would return the child to the father on August 5, 1979. On July 20, 1979, the mother took the child from the care of the father's babysitter, and on July 23, 1979, the mother, her husband, and the minor child arrived at the residence of the Grandparents' home in Milwaukee. During this visit the Grandparents were informed that their daughter and son-in-law did not intend to return the child to the father. There is no dispute that the Grandparents knew that such was their daughter's and her husband's intention and that it was contrary to and in violation of the custody order. Prior to the departure of Bonnie and Earl McMahan and the child from the Grandparents' residence, two checking accounts were opened at the St. Francis State Bank in St. Francis, Wisconsin. Irma Loeffler and Bonnie McMahan were co-signatories on one checking account and Irma Loeffler and Earl McMahan were co-signa-

tories on the other. The alleged purpose of these checking accounts was to receive Bonnie McMahan's and Earl McMahan's retirement funds.

On or about August 1, 1979, Bonnie and Earl McMahan and the child left the Grandparents' residence. Thereafter the grandmother received several thousand dollars in retirement funds and forwarded those funds to Bonnie and Earl McMahan. In addition, the Grandparents made Christmas gifts in the amounts of $100 and $150 to Bonnie and Earl McMahan in December 1979.

In the fall of 1979, Bonnie and Earl McMahan and the child returned to the Grandparents' residence and remained with the Grandparents for one or two days.

Bonnie and Earl McMahan made yet another trip back to the Grandparents' residence with the child on April 14, 1980. During this visit, the grandfather took title to both Earl McMahan's and Bonnie McMahan's vehicles and disposed of those vehicles on their behalf.

Finally, it is undisputed that the plaintiff father has not suffered an extreme disabling emotional response as a result of the actions of the Grandparents.

A review of the materials submitted to the Court in connection with the pending motion convinces the Court that the following issues of fact are in dispute. First, there is a dispute whether the defendant Grandparents have seen the minor child on two or three occasions since August 1979. The plaintiff contends that the minor child stayed with the defendant Grandparents on three occasions since August 1979: the first time in the fall of 1979; a second time in April 1980; and a third time from May 10–12, 1980. The Grandparents contend that they have seen the minor child on only two occasions since August 1979: for the first time in the fall of 1979, and for a second time in April 1980; and they further contend that whether the child was at their residence two or three times is not material to the legal issue involved in this action.

Second, there is a dispute whether the Grandparents have known and know today the whereabouts of the plaintiff's minor child, the mother, and her husband. The father contends that the Grandparents have been in continual contact with the defendant mother and Ray McMahan and have been in contact with those two persons in regard to this litigation. The Grandparents contend that on one occasion they forwarded money belonging to the mother and her husband to them without becoming aware of their whereabouts; that they have been unaware of their whereabouts since July 1979; and that in any event whether they know the whereabouts of the child, the mother, or Ray McMahan is not material to whether the Grandparents' past conduct amounts to taking, withholding, or concealing the minor child from the father.

## II. *ARE THE DEFENDANT GRAND- PARENTS ENTITLED TO JUDG- MENT AS A MATTER OF LAW*

The issues before the court are whether the record shows that there is no genuine issue as to any material fact and whether the defendant Grandparents are entitled to judgment as a matter of law.

The Grandparents advance alternative arguments in support of their motion for summary judgment. Their first argument is that in the event this Court does not create a new cause of action in tort, the allegations of the complaint and the undisputed facts are insufficient to state a cause of action for the intentional infliction of emotional distress. Alternatively, they argue that in the event this Court creates a new cause of action in tort, the undisputed material facts show that they did not conspire to take or withhold the minor child from the plaintiff.

Put differently, the Grandparents first argue that summary judgment is appropriate in the case at bar since the civil wrong done pursuant to the conspiracy was the tort of the intentional infliction of emotional distress; and since the undisputed facts show that the plaintiff has not suffered an extreme disabling emotional response as a

result of their actions, which they claim Wisconsin law requires, they are entitled to judgment as a matter of law.

Since this court's jurisdiction is based on diversity of citizenship, the substantive law to be applied in this action is that of the State of Wisconsin. *Erie Railroad Co. v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1939).

A civil conspiracy in Wisconsin has been defined as follows:

"In Wisconsin civil conspiracy has been defined as a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful. *Mendelson v. Blatz Brewing Co.* (1960), 9 Wis.2d 487, 490, 101 N.W.2d 805. The law of civil conspiracy is further characterized in this state by the following:

" 'It is the established law of this state that there is no such thing as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a conspiracy but none for the conspiracy alone. In a civil action for damages for an executed conspiracy, the gist of the action is the damages.' *Singer v. Singer* (1944), 245 Wis. 191, 195, 14 N.W.2d 43." *Radue v. Dill*, 74 Wis.2d 239, 241, 246 N.W.2d 507, 509 (1976).

To state a cause of action for civil conspiracy under this definitional framework, the complaint must allege: (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts. *Onderdonk v. Lamb*, 79 Wis.2d 241, 247, 255 N.W.2d 507, 510 (1977). A consummated conspiracy, in and of itself, is not a cause of action but rather only the method by which a civil wrong is committed. See *Goldman v. Bloom*, 90 Wis.2d 466, 280 N.W.2d 170 (1979).

In *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 694, 271 N.W.2d 368, 378 (1978), the Court set forth the following generalities concerning recovery by a plaintiff for mental distress:

"In negligent torts, mental distress is compensable only when there is an accompanying or resulting physical injury. *Ver Hagen v. Gibbons*, 47 Wis.2d 220, 177 N.W.2d 83 (1970). In intentional torts, substantial other damages in addition to damages for emotional distress are required. *D. R. W. Corp. v. Cordes*, 65 Wis.2d 303, 222 N.W.2d 671 (1974). Where the tort is specifically that of the intentional infliction of emotional distress, no other damages need be alleged or proved. However, additional limitations are imposed on a cause of action for the intentional infliction of emotional distress. A plaintiff must prove that the purpose of the conduct was to cause emotional distress, that the conduct was extreme and outrageous, that it was the cause in fact of the plaintiff's injury, and that the plaintiff suffered an extreme disabling emotional response. *McKissick v. Schroeder*, 70 Wis.2d 825, 832, 235 N.W.2d 686 (1975); *Alsteen v. Gehl*, 21 Wis.2d 349, 124 N.W.2d 312 (1963)."

Thus, the Grandparents prevail on their motion for summary judgment if the plaintiff's cause of action is specifically that of the intentional infliction of emotional distress, since the undisputed facts show that the plaintiff has not suffered an extreme disabling emotional response; see *Alsteen v. Gehl*, 21 Wis.2d 349, 124 N.W.2d 312 (1963); but the plaintiff prevails insofar as the Grandparents' liability cannot be determined by summary judgment if the plaintiff's cause of action is based on an intentional tort such as unlawful interference with custody of a parent entitled to such custody, since there appear to be genuine issues of fact regarding whether the Grandparents have actively conspired with the other defendants to conceal the minor child's whereabouts and whether they have interfered with the plaintiff's efforts to locate his minor child.

It is the Court's opinion that the plaintiff must prevail in the case at bar insofar as the Grandparents' liability cannot be determined by summary judgment.

The complaint in the case at bar states a cause of action for civil conspiracy under the definitional framework set forth in *Onderdonk v. Lamb*, supra, and under *Goldman v. Bloom*, supra.

Alleged as overt acts carried out by the Grandparents in furtherance of the conspiracy are: (1) opening checking accounts as a means of transferring funds to Bonnie and Ray McMahan; (2) giving the McMahans Christmas gifts; (3) disposing of the McMahans' two vehicles for them; (4) allowing the McMahans and the minor child to stay at their residence three times from the time of learning that the McMahans had no intention to return the minor child to the plaintiff; and (5) denying that they have been unaware of the whereabouts of Bonnie and Ray McMahan and the minor child since July 1979. Alleged as the wrongful acts are the violation of the custody decree; the violation of § 946.715, Wis.Stats.; and, as will be set forth below, the civil wrong of tortious interference with the custody of a parent entitled to such custody. Finally, alleged as damages resulting from such acts are emotional distress as well as expenses incurred in regaining custody of the minor child.

■ Every cause of action in tort must have three elements: (1) a duty, (2) a breach of that duty, and (3) resulting damages. *Schicker v. Leick*, 40 Wis.2d 295, 299, 162 N.W.2d 66, 68 (1968). The fact that Wisconsin has not heretofore recognized a cause of action in tort for unlawful interference with custody of a parent entitled to such custody does not mean that a Wisconsin court would not permit such a cause of action. See Prosser, Law of Torts 3–4 (4th ed. 1971).

■ It is this Court's opinion that Wisconsin would recognize a cause of action in tort for unlawful interference with custody of a parent entitled to such custody. First, there is the question of whether a duty exists, which is a question of law. See *Schicker v. Leick*, 40 Wis.2d 295, 299, 162 N.W.2d 66, 68 (1968). For two reasons it is the Court's opinion that Wisconsin courts would determine that the Grandparents can be held to owe a duty to the plaintiff.

First, Wisconsin gives great weight to the Restatements, see, e. g., *Schicker v. Leick*, 40 Wis.2d 295, 162 N.W.2d 66 (1968), and the Restatement (Second) of Torts § 700 (1977) recognizes a tort for causing a minor child to leave or not to return home. The comments to the Restatement state:

"a. * * * So, too, the action can be maintained against one who, with knowledge that the child is away from home against the will of the parent, imprisons it or induces the child, whether by affording it employment or otherwise, not to return home. No action can be maintained, however, against one who merely gives shelter and sustenance to a child known by the actor to have left home without the parent's permission, if the child is not induced by other means to remain away from its home.

"b. To become liable under the rule stated in this Section for inducing a child not to return home, it is necessary that the actor know that the child is away from home against the will of the parent. Unless the actor is privileged, as to which see Comments *e* and *f*, his motive or purpose in preventing the child from returning home or inducing it not to return, is immaterial. Thus, the actor may be inspired by motives of kindness and affection toward the child but none the less become liable for interfering with the interests of its lawful custodian."

I am persuaded that the Wisconsin Supreme Court would follow the principles set forth in the Restatement and that on the facts of the case at bar it would find the Restatement applicable.

■ Second, unlawful interference by any person acting pursuant to directions from the child's other parent with parental rights of the custodial parent violates Wisconsin's criminal code. See § 946.715, Wis. Stats. This clear statement of Wisconsin legislative policy is persuasive evidence that the Wisconsin Supreme Court would recognize a cause of action in tort for unlawful interference with custody of a parent entitled to such custody.

Third, although there is no Wisconsin authority dealing with a cause of action based on unlawful interference with custody of a parent entitled to such custody, the plaintiff has pointed out cases that have arisen in other jurisdictions which have recognized such a cause of action. See, e. g., *Fenslage v. Dawkins*, 629 F.2d 1107 (5th Cir. 1980); *Hinton v. Hinton*, 436 F.2d 211 (D.C.Cir. 1970), aff'd without op., 492 F.2d 669 (D.C. Cir.1974); *Kajtazi v. Kajtazi*, 488 F.Supp. 15 (E.D.N.Y.1978); *Rosefield v. Rosefield*, 221 Cal.App.2d 431, 34 Cal.Rptr. 479 (1963); *Brown v. Brown*, 338 Mich. 492, 61 N.W.2d 656 (1953), cert. denied, 348 U.S. 816, 75 S.Ct. 27, 99 L.Ed. 644 (1954); *LeGrenade v. Gordon*, 46 N.C.App. 329, 264 S.E.2d 757 (1980); but see *Friedman v. Friedman*, 79 Misc.2d 646, 361 N.Y.S.2d 108 (1974). Based on a review of these cases, it is my opinion that the trend of the law is to recognize a cause of action in tort against those who unlawfully interfere with custody of a parent entitled to such custody.

■■■■ Returning to the three elements that every cause of action in tort must have, I am persuaded that the undisputed facts of the case show a breach of duty on the part of the Grandparents in that they knew that the plaintiff had been awarded custody of the minor child and knew that Bonnie and Earl McMahan did not intend to return the minor child to the plaintiff; yet the Grandparents made no effort to return the minor child to her lawful custodian and assisted the McMahans in concealing the whereabouts of the child. The plaintiff's allegations, if true, also show a breach of the Grandparents' duty, because by giving the minor child shelter and by denying knowledge of the minor child's whereabouts, the Grandparents have, in effect, prevented the minor child from returning to her lawful custodian.

Finally, the plaintiff has alleged that he has incurred substantial expenses in attempting to locate and recover the custody of his minor child as well as suffered damages for emotional distress.

In summary, the plaintiff in the case at bar prevails insofar as the Grandparents'

liability cannot be determined by their motion for summary judgment, since the Court is of the opinion that Wisconsin would recognize a cause of action in tort against those who unlawfully interfere with custody of a parent entitled to such custody, and since there appears to be genuine issues of fact regarding whether the Grandparents conspired with the other defendants to prevent the minor child from returning to her lawful custodian.

### III. *ORDER*

For the foregoing reasons,

IT IS ORDERED that the motion of the defendants Irma Loeffler and Alvin F. Loeffler for summary judgment is denied.