**Kenneth LLOYD, Plaintiff,**

v.

**Irma LOEFFLER, et al., Defendants.**

**Civ. A. No. 80–C–450.**

United States District Court,
E. D. Wisconsin.

May 7, 1982.

Timothy J. Strattner, Podell, Ugent & Cross, Milwaukee, Wis. and Carole S. Gailor, Fairfax, Va., for plaintiff.

Lawrence Haskin, Cathlina & Haskin, South Milwaukee, Wis. and Richard J. Podell, Milwaukee, Wis., for defendants Iram and Alfin F. Loeffler.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

REYNOLDS, Chief Judge.

Plaintiff Kenneth Lloyd brought this action against the defendants alleging that they tortiously interfered with his custody of his daughter Carol Caren Lloyd, and that they conspired to prevent him from regaining the custody of his daughter. Defendant Bonnie Loeffler, a/k/a Bonnie Loeffler McMahan, is the child's natural mother and is married to defendant Earl Ray McMahan. Defendants Irma Loeffler and Alvin F. Loeffler are the mother and father of Bonnie Loeffler McMahan. This court has jurisdiction under 28 U.S.C. § 1332.

A court trial began in this action on March 22, 1982. At the completion of the trial on March 24, 1982, the Court announced from the bench its decision that the defendants were liable to the plaintiff.

The Court stated that the amount of damages and the detailed findings of fact and conclusions of law would follow.

### FINDINGS OF FACT

1. At the time of the filing and service of the plaintiff's complaint, defendants Irma Loeffler and Alvin Loeffler were citizens and bona fide residents and domiciliaries of the State of Wisconsin, and further are currently residing at 1513 Menomonee Avenue, South Milwaukee, Wisconsin.

2. At the time of filing of the complaint, plaintiff Kenneth Lloyd was a citizen of the Commonwealth of Virginia, specifically residing at 7521 Republic Court, Apt. 303, Alexandria, Virginia.

3. Bonnie Loeffler, a/k/a Bonnie Loeffler McMahan (hereinafter referred to as Bonnie McMahan) and Earl Ray McMahan (hereinafter referred to as Earl McMahan) were bona fide residents and domiciliaries of the State of Maryland and specifically of Oxon Hill, Maryland, until August 1979.

4. The amount in controversy exceeds $10,000.00, exclusive of interest and costs.

5. On April 12, 1978, the minor child, Carol Caren Lloyd, nee Carol Renee Loeffler (hereinafter Carol Caren Lloyd) was born.

6. Defendant Bonnie McMahan is the natural mother of the minor child, Carol Caren Lloyd.

7. Plaintiff Kenneth Lloyd is the natural father of the minor child, Carol Caren Lloyd.

8. Defendants Irma Loeffler and Alvin Loeffler are the natural parents of the defendant Bonnie L. McMahan and the maternal grandparents of Carol Caren Lloyd.

9. Defendant Earl McMahan is the husband of Bonnie McMahan but is no relation to the minor child, Carol Caren Lloyd.

10. Carol Caren Lloyd was conceived out of wedlock, and at no time were the plaintiff Kenneth Lloyd and the defendant Bonnie McMahan married to one another.

11. On March 25, 1978, prior to the birth of Carol Caren Lloyd, the plaintiff Kenneth Lloyd filed a petition for declaratory and injunctive relief and a petition for custody in the Circuit Court of Prince Georges County, Maryland, Equity No. 4080, naming as respondent the defendant Bonnie Loeffler.

12. From approximately three weeks before the birth of Carol Caren Lloyd and until April 14, 1978, plaintiff Kenneth Lloyd was unable to find defendant Bonnie McMahan.

13. From her birth until April 25, 1979, Carol Caren Lloyd resided with her mother, Bonnie McMahan.

14. On April 24 and 25, 1979, the issue of custody of Carol Caren Lloyd was heard in the Circuit Court of Prince Georges County, Maryland, before the Honorable Audrey Melbourne.

15. On April 24, 1979, at trial of the issue of the custody of the child Carol Caren Lloyd in the Circuit Court of Prince Georges County, Maryland, the parties Bonnie Loeffler McMahan and Kenneth Lloyd were present in person with witnesses called by each of them to testify on his or her behalf.

16. Subsequent to the entry of record of the final order of the Honorable Audrey Melbourne of the Prince Georges County Circuit Court on May 2, 1979, no superseding custody order or modification of the final order of May 2, 1979, has been entered of record with notice to the plaintiff Kenneth Lloyd in any state of the United States.

17. On April 25, 1979, the Court rendered its decision awarding custody of Carol Caren Lloyd to the plaintiff Kenneth Lloyd with visitation rights to Bonnie McMahan and changing the name of the child from Carol Renee Loeffler to Carol Caren Lloyd.

18. On April 25, 1979, the maternal grandmother and co-defendant, Irma Loeffler, was present in the aforementioned court when the decision was rendered and had actual knowledge that the plaintiff had been granted sole custody of the child, Carol Caren Lloyd.

19. On April 25, 1979, the maternal grandfather and co-defendant, Alvin Loef-

fler, was informed of the Court's decision concerning the award of sole custody of Carol Caren Lloyd to Kenneth Lloyd.

20. On June 21, 1979, Bonnie McMahan informed Kenneth Lloyd that she would commence her summer visitation with the minor child on July 20, 1979; and further, that she would take the child to the home of the maternal grandparents, co-defendants Irma and Alvin Loeffler, in South Milwaukee, Wisconsin, and that she would return the child to the father on August 5, 1979.

21. On July 20, 1979, Bonnie McMahan and Earl McMahan were given the minor child from the care of the father's babysitter in Alexandria, Virginia, and arrived sometime near the end of July 1979 at the home of the child's maternal grandparents, Irma and Alvin Loeffler, in South Milwaukee, Wisconsin.

22. During the period of the visit, the mother and defendant, Bonnie McMahan, together with her husband and co-defendant, Earl McMahan, informed the grandparents, Irma and Alvin Loeffler, that they, Bonnie and Earl McMahan, had no intention of returning the minor child, Carol Caren Lloyd, to the legal custody of the plaintiff Kenneth Lloyd, and both Irma and Alvin Loeffler knew that such was their daughter's and her husband's intention, and that this was contrary to and in violation of the aforesaid custody order.

23. Irma and Alvin Loeffler, on or about July 25, 1979, were told by Bonnie and Earl McMahan that the proposed conduct of Bonnie and Earl McMahan, i.e., failing to return the minor child, Carol Caren Lloyd, to the legal custody of Kenneth Lloyd, was contempt of the court's order of custody.

24. After Irma and Alvin Loeffler were told by Bonnie and Earl McMahan that Bonnie and Earl McMahan had no intention of returning Carol Caren Lloyd to the legal custody of Kenneth Lloyd, but before the departure of Bonnie and Earl McMahan with the minor child from the home of the defendants Irma and Alvin Loeffler, two joint checking accounts were opened at the St. Francis State Bank in St. Francis, Wisconsin.

25. Irma Loeffler and Bonnie McMahan were co-signatories on Account # 33034, and Irma Loeffler and Earl McMahan were co-signatories on Account # 33026 of the above-mentioned checking accounts.

26. Defendants Irma Loeffler and Alvin Loeffler understood that these accounts were opened to permit Bonnie McMahan and Earl McMahan to receive their retirement funds without disclosing their location and the location of the child, Carol Caren Lloyd.

27. On July 27 and 28, 1979, defendants Irma and Alvin Loeffler purchased the 1973 green Chevrolet Nova owned by Bonnie McMahan for the approximate sum of $1,150.00 and subsequently sold the car to an unnamed third party.

28. Defendants Irma Loeffler and Alvin Loeffler understood that the Nova was to be sold in this manner to hinder any efforts to locate Carol Caren Lloyd.

29. On or about August 1, 1979, Bonnie and Earl McMahan and the minor child, Carol Caren Lloyd, left the residence of Irma and Alvin Loeffler.

30. On August 6, 1979, the Honorable Audrey Melbourne of the Prince Georges County Circuit Court of Prince Georges County, Maryland, issued a contempt citation in Equity No. E–4080 against the defendant Bonnie McMahan for failure to return the child, Carol Caren Lloyd, to the custody of the plaintiff Kenneth Lloyd.

31. Since August 5, 1979, the plaintiff Kenneth Lloyd has not seen the child, Carol Caren Lloyd, nor has Carol Caren Lloyd been returned to his physical or legal custody.

32. In the fall of 1979, Bonnie and Earl McMahan and the minor child, Carol Caren Lloyd, returned to the residence of Irma and Alvin Loeffler and remained there at least one day, or a part thereof.

33. On approximately December 17, 1979, the defendant Irma Loeffler deposited into the aforementioned joint checking accounts a total of $8,367.68 in retirement funds from the Central Nomis Office, for-

mer employer of Bonnie and Earl McMahan.

34. Sometime after the retirement funds had been deposited, Irma Loeffler talked with Bonnie McMahan by telephone and informed her of the funds' arrival. Bonnie McMahan mailed a letter to the Loefflers, instructing the Loefflers as to how to send the retirement funds to the McMahans. The letter contained a self-addressed envelope with a small piece of cardboard taped over the address.

35. Irma Loeffler obtained a money order in the amount of the retirement funds. This money order was mailed by Alvin Loeffler in the envelope provided by Bonnie McMahan. Alvin Loeffler did not remove the cardboard covering the address on the envelope until immediately before depositing the envelope·in the mail slot. Neither Irma Loeffler nor Alvin Loeffler ever looked at the address on the envelope.

36. Irma Loeffler and Alvin Loeffler understood that transferring the funds in this manner was designed to hinder any efforts to locate Carol Caren Lloyd.

37. Irma and Alvin Loeffler made Christmas gifts to Bonnie and Earl McMahan in December 1979 in the amount of approximately $150.00.

38. On or about April 14, 1980, Bonnie and Earl McMahan, along with the minor child, Carol Caren Lloyd, returned to the residence of Irma and Alvin Loeffler and remained there for two days. They arrived in two vehicles. One vehicle was parked on a side street and was never seen by Irma Loeffler or Alvin Loeffler. The other vehicle was a Dodge truck owned by Earl McMahan, bearing Maryland license plates H69924.

39. During this stay, Alvin Loeffler agreed to sell the Dodge truck for Earl McMahan. The license tags on this truck were due to expire on April 30, 1980.

40. On May 14, 1980, the defendant Alvin Loeffler registered the Dodge truck he had purchased from Earl Ray McMahan with the Wisconsin Department of Transportation.

41. Defendants Irma Loeffler and Alvin Loeffler understood that the Dodge truck was to be sold in this manner to hinder efforts to locate Carol Caren Lloyd.

42. At all times from April 25, 1979, until the current date, the defendants Irma Loeffler, Alvin Loeffler, Bonnie McMahan, and Earl McMahan knew that the plaintiff Kenneth Lloyd had legal custody of the minor child, Carol Caren Lloyd.

43. On each occasion when ·the minor child, Carol Caren Lloyd, was present in the home of the defendants Irma and Alvin Loeffler, including July-August 1979, the fall of 1979, and April 1980, the defendants failed to notify the plaintiff, or any duly constituted legal authority, as to the presence of the child or the defendants Bonnie and Earl McMahan in their home.

44. Irma Loeffler intended by her actions to assist Bonnie and Earl McMahan in secreting the child, Carol Caren Lloyd. Her support for the actions of the McMahans is disclosed by her statement to Robert Burseth, an investigator hired by Lloyd, during a police search of the Loeffler residence. Referring to Kenneth Lloyd, she told Burseth: "You can tell that son of a bitch that he will never get that baby back." Although Irma Loeffler denies ever making that statement, the Court found her answers to be evasive and her demeanor less than candid.

45. Alvin Loeffler understood that his actions had the effect of assisting Bonnie and Earl McMahan in their efforts to secret the child, Carol Caren Lloyd. During the July 1979 visit, he advised Bonnie and Earl McMahan not to disobey the court order. Nonetheless, he assisted Bonnie and Earl McMahan with full knowledge that what they were doing was illegal.

46. At all times the defendants Irma and Alvin Loeffler had advised the defendants Bonnie and Earl McMahan of the fact that a civil action was pending against them in the United States District Court for the Eastern District of Wisconsin, and further advised defendants Bonnie and Earl McMahan as to the continuing status of the pending litigation.

47. Defendants Irma and Alvin Loeffler have had continuous monthly contact by telephone with Bonnie and Earl McMahan since August 1979, and have informed the defendants Bonnie and Earl McMahan of the suit pending against them, and have further advised Bonnie and Earl McMahan of the status of the litigation.

48. All cards and letters received by the Loefflers from the McMahans since July 1979 have been postmarked Milwaukee, Wisconsin.

49. Plaintiff Kenneth Lloyd has taken all reasonable steps, including publication, to attempt to give Bonnie and Earl McMahan notice of this action and service of process.

50. Defendants Bonnie and Earl McMahan have not filed an appearance in this action.

51. After the abduction of his child, Kenneth Lloyd paid Uffinger Investigative Agencies, Inc., a total of $2,500.00; Burseth & Associates, Inc., a total of $5,017.35; and attorney Carole Gailor, a total of $709.00 to try to find Carol Caren Lloyd. In connection with the Burseth investigation, Kenneth Lloyd made two visits to Milwaukee, costing him $591.34 in expenses and approximately $400.00 in lost wages. He also incurred long distance telephone toll charges of $120.76.

52. After the abduction of his child, Kenneth Lloyd suffered headaches, sleeplessness, and had difficulty maintaining concentration. He became anxious about his daughter's well-being, depressed about his inability to find her, and preoccupied. He lost self-confidence and became numb toward personal and social involvement. He remains unable to adjust to the absence of his daughter. These emotional difficulties have injured Kenneth Lloyd in the amount of $30,000.00.

53. By the loss of the society of his daughter, Kenneth Lloyd has been injured in the amount of $25,000.00.

54. To treat his emotional difficulties, Kenneth Lloyd visited Jeanie Almo, a nurse psychologist, at a total cost of $600.00. When Jeanie Almo decided he needed more help than she could provide, she referred him to Dr. Eugene Stammeyer, a clinical psychologist. Dr. Stammeyer diagnosed Kenneth Lloyd as suffering from a post-traumatic stress disorder. The total cost of Kenneth Lloyd's past visits to Dr. Stammeyer is $3,800.00. He will continue to see Dr. Stammeyer who charges $50.00 per visit. Assuming that he continues to see Dr. Stammeyer for twenty-six more sessions, the value of these future visits is $1,300.00.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of this case under 28 U.S.C. § 1332, the action being between citizens of Wisconsin and of a foreign state, and the amount in controversy exceeding the sum of $10,000.00.

2. This action does not fall within the domestic relations exception to diversity jurisdiction. The action is one in tort and does not seek any adjustment of family status or declaration of rights among family matters. See *Wasserman v. Wasserman*, 671 F.2d 832 (4th Cir., 1982); *Erspan v. Badgett*, 647 F.2d 550, 553 n. 1 (5th Cir. 1981).

3. The substantive law to be applied in this action is that of the State of Wisconsin. *Erie Railroad Co. v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1939).

4. The Maryland custody order is valid.

5. Plaintiff is entitled to a judgment by default against defendants Bonnie McMahan and Earl Ray McMahan. See Rule 55(b), Federal Rules of Civil Procedure.

6. In Wisconsin a civil conspiracy is a "combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." *Radue v. Dill*, 74 Wis.2d 239, 241, 246 N.W.2d 507 (1976). To prove a cause of action for civil conspiracy, the evidence must demonstrate: (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto,

and (3) the damage resulting from such act or acts. *Onderdonk v. Lamb*, 79 Wis.2d 241, 247, 255 N.W.2d 507 (1977).

■ 7. A conspiracy need not be formed by an express agreement. A tacit understanding among conspirators to work to a common purpose is all that is required. *Lange v. Heckel*, 171 Wis. 59, 67, 175 N.W. 788, 791 (1920).

8. In this case the unlawful purpose was to interfere with the custody of a parent entitled to such custody.

■ 9. Wisconsin has not heretofore recognized a cause of action in tort for unlawful intentional interference with custody of a parent entitled to such custody. Nonetheless, this Court holds that Wisconsin would recognize such a tort. Wisconsin courts would recognize a duty not to intentionally interfere with the legal custody of a parent for three reasons.

First, Wisconsin gives great weight to the Restatements, see, e.g., *Schicker v. Leick*, 40 Wis.2d 295, 162 N.W.2d 66 (1968), and the Restatement (Second) of Torts § 700 (1977) recognizes a tort for causing a minor child to leave or not to return home. The comments to the Restatement state:

"a. * * * So, too, the action can be maintained against one who, with knowledge that the child is away from home against the will of the parent, imprisons it or induces the child, whether by affording it employment or otherwise, not to return home. No action can be maintained, however, against one who merely gives shelter and sustenance to a child known by the actor to have left home without the parent's permission, if the child is not induced by other means to remain away from its home.

"b. To become liable under the rule stated in this Section for inducing a child not to return home, it is necessary that the actor know that the child is away from home against the will of the parent. * * * Thus, the actor may be inspired by motives of kindness and affection toward the child but none the less become liable for interfering with the interests of its lawful custodian."

I am persuaded that the Wisconsin Supreme Court would follow the principles set forth in the Restatement and that on the facts of the case at bar it would find the Restatement applicable.

Second, unlawful interference with the parental rights of the custodial parent by any person acting pursuant to directions from the child's other parent violates Wisconsin's criminal code. See § 946.715, Wis. Stats. This clear statement of Wisconsin legislative policy is persuasive evidence that the Wisconsin Supreme Court would recognize a cause of action in tort for unlawful interference with custody of a parent entitled to such custody.

Third, although there is no Wisconsin authority dealing with a cause of action based on unlawful interference with custody of a parent entitled to such custody, the plaintiff has pointed out cases that have arisen in other jurisdictions which have recognized such a cause of action. See, e.g., *Fenslage v. Dawkins*, 629 F.2d 1107 (5th Cir. 1980); *Hinton v. Hinton*, 436 F.2d 211 (D.C.Cir. 1970); *Kajtazi v. Kajtazi*, 488 F.Supp. 15 (E.D.N.Y.1978); *Rosefield v. Rosefield*, 221 Cal.App.2d 431, 34 Cal.Rptr. 479 (1963); *Brown v. Brown*, 338 Mich. 492, 61 N.W.2d 656 (1953), cert. denied, 348 U.S. 816, 75 S.Ct. 27, 99 L.Ed. 643 (1954); *LeGrenade v. Gordon*, 46 N.C.App. 329, 264 S.E.2d 757 (N.C.App.1980); but see *Friedman v. Friedman*, 79 Misc.2d 646, 361 N.Y.S.2d 108 (1974).

■ 10. The actions of Bonnie and Earl McMahan breached the duty they owed Kenneth Lloyd not to interfere with the lawful custody of his child. The actions of Irma and Alvin Loeffler in (1) selling Bonnie McMahan's Nova, (2) establishing accounts through which to forward Bonnie and Earl McMahan's retirement funds, (3) forwarding the retirement funds, (4) offering to sell Earl McMahan's truck, and (5) sheltering Carol Caren Lloyd in their home at various times, while understanding that one of the purposes of these actions was to facilitate Bonnie and Earl McMahan's breach of duty to Kenneth Lloyd, an action

Irma and Alvin Loeffler knew to be illegal, evidence the existence of an understanding or agreement among the defendants which constituted a civil conspiracy to interfere with the custody of a parent entitled to such custody. Kenneth Lloyd is entitled to damages resulting from this conspiracy.

11. The actions of Irma Loeffler and Alvin Loeffler, detailed in the foregoing paragraph, breached the duty Irma and Alvin Loeffler owed Kenneth Lloyd not to interfere with the lawful custody of his child and constitute an actionable tort which entitles Kenneth Lloyd to damages.

12. Kenneth Lloyd is entitled to actual damages for injuries resulting from the conspiracy and the tortious actions of the defendants. See, e.g., *Martin v. Ebert*, 245 Wis. 341, 13 N.W.2d 907 (1944). These damages include recovery for the loss of the society of his daughter as well as for the reasonable expenses incurred in attempting to regain custody of the child. See Restatement (Second) of Torts § 700(g).

13. Since the tort involved in this action is not the tort of intentional infliction of emotional stress but rather is the tort of the intentional interference with the custody of a parent entitled to such custody, plaintiff Kenneth Lloyd is entitled to the recovery of damages for emotional distress if the emotional distress is severe and if, in addition, substantial other damages are proven. See *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 695–96, 271 N.W.2d 368 (1978). In this case, the Court holds that Kenneth Lloyd's mental distress is severe and that substantial other damages have been proven.

14. The defendants are jointly and severally liable to the plaintiff for the foregoing compensatory damages. See *Martin v. Ebert*, 245 Wis. 341, 344, 13 N.W.2d 907 (1944); *Drexler v. Zohlen*, 216 Wis. 483, 487, 257 N.W. 675 (1934).

15. The plaintiff may recover punitive damages against the defendants upon a showing that the defendants acted with wanton, willful, or reckless disregard for his rights. See *Fahrenberg v. Tengel*, 96 Wis.2d 211, 221, 291 N.W.2d 516 (1980).

16. The actions of Irma and Alvin Loeffler in this case do not justify the award of punitive damages against them. The grandparents found themselves in an understandably difficult position. They did not initiate the tortious actions, and Alvin Loeffler initially cautioned the McMahans against their course of action. Although Irma Loeffler was angry with the plaintiff over the entire custody matter, the facts of this case do not demonstrate that Irma Loeffler and Alvin Loeffler harbored the kind of malicious intent to injure the plaintiff that would warrant punitive damages.

17. The actions of Bonnie and Earl McMahan in this case do justify the award of punitive damages against them.

18. Plaintiff Kenneth Lloyd is entitled to a default judgment against Bonnie McMahan and Earl McMahan.

19. Plaintiff Kenneth Lloyd is entitled to a judgment against defendants Irma Loeffler, Alvin Loeffler, Bonnie McMahan, and Earl McMahan, jointly and severally, for the sum of $70,038.45.

20. Plaintiff Kenneth Lloyd is entitled to a judgment of punitive damages against defendants Bonnie McMahan and Earl McMahan, jointly and severally. Since they are continuing to wrong the plaintiff Kenneth Lloyd, the amount of punitive damages against Bonnie McMahan and Earl McMahan shall be increased each month for so long as they interfere with Kenneth Lloyd's custody of his daughter, Carol Caren Lloyd. The sum of punitive damages due shall be $25,000.00 and shall increase at the rate of $2,000.00 per month until the child, Carol Caren Lloyd, is returned to her father, Kenneth Lloyd, so long as Kenneth Lloyd remains the legal custodian of Carol Caren Lloyd.

### ORDER

IT IS THEREFORE ORDERED that judgment be entered in favor of the plaintiff Kenneth Lloyd against defendants Irma Loeffler, Alvin F. Loeffler, Bonnie

Loeffler McMahan, and Earl Ray McMahan, jointly and severally, for the sum of $70,-038.45; and in favor of the plaintiff Kenneth Lloyd against defendants Bonnie Loeffler McMahan and Earl Ray McMahan, jointly and severally, for the sum of $25,-000.00, increasing at the rate of $2,000.00 per month on the first day of each month, beginning June 1, 1982, until Carol Caren Lloyd is returned to her father, Kenneth Lloyd, so long as Kenneth Lloyd remains the legal custodian of Carol Caren Lloyd.